FREDERICK J. SPIEGLER *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed June 23, 1905.*

1. INJUNCTION—*when court of equity may enjoin enforcement of ordinance.* A court of equity, in order to avoid a multiplicity of suits, may enjoin the enforcement of an illegal ordinance, where it appears that the interests of the complainants and many other persons are identical and are injuriously affected by the ordinance.

2. SAME—*when case must be decided upon face of bill.* Where a preliminary injunction restraining the enforcement of an ordinance has been dissolved, on motion, after the filing of an answer and replication and the bill dismissed for want of equity, the motion to dissolve will be treated, on appeal, as a demurrer to the bill and the case decided upon the face of the bill as though no answer or· replication had been filed.

3. MUNICIPAL CORPORATIONS—*city may regulate the handling of oils in tank-wagons on streets.* In the exercise of its police power a city organized under the general law has power to pass an ordinance regulating, in a reasonable manner, the handling of combustible oils in tank-wagons or other vehicles upon the public streets.

4. ORDINANCES—*when an ordinance is not invalid as delegating legislative powers.* An ordinance regulating the handling of oils in tank-wagons or other vehicles is not rendered invalid, as delegating legislative power to the commissioner of public works, by a provision that each wagon or vehicle shall be equipped with a drip-pan or other device to prevent spilling of oil on the streets, which "shall be subject to the approval" of such commissioner.

5. SAME—*ordinance giving mayor right to revoke license does not delegate judicial power.* An ordinance imposing ·a license fee upon tank-wagons used in handling combustible oils on the streets, which gives the mayor the right to revoke any license upon proof that the licensee has violated the provisions of the ordinances of the city, is not invalid, as conferring judicial power on the mayor.

6. SAME—*ordinance construed as to extent of right to revoke a license.* An ordinance imposing a license fee upon tank-wagons which gives the mayor the right to revoke any license upon proof of violation by the licensee "of any of the provisions of the ordinances of the city of Chicago now in force or which may hereafter be passed," refers to ·violations of ordinances upon the subject covered by the license ordinance,—not to violations of other ordinances.

7. SAME—*failure to limit life of bond to life of license is not fatal.* Failure to limit a licensee's bond, conditioned upon compliance with the provisions of the ordinance, to the life of the license, does not render a license ordinance invalid, since the bond will become void at the expiration of the period covered by the license if no breach of its terms has occurred.

8. SAME—*when amount fixed as license fee is conclusive.* The amount fixed by a city as a license fee is conclusive upon the courts unless it is manifest the real purpose is to raise revenue under the guise of a police regulation, or to prohibit, by means of an oppressive fee, the exercise of a lawful business.

9. SAME—*ordinance regulating and licensing oil business construed.* The ordinance of the city of Chicago passed January 4, 1904, "regulating and licensing oil peddlers," (set forth at large in the opinion,) applies only to sales and deliveries of oils made from tank-wagons or other vehicles upon the public streets of the city, and not to those made in cans or unbroken packages, although delivered in wagons or other vehicles.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This was a bill in chancery filed by Frederick J. Spiegler, Max Mildenberg, the Republic Oil Company and the Standard Oil Company, in the superior court of Cook county, on behalf of themselves and all other persons and corporations similarly situated doing business in the city of Chicago, to enjoin the enforcement, by said city and its officers, of the provisions of an ordinance of said city passed on January 4, 1904, entitled "An ordinance regulating and licensing oil peddlers." The ordinance reads as follows:

*"Be it ordained by the city council of the City of Chicago:*

"SECTION 1. That it shall be unlawful for any person, firm or corporation to engage or continue in the business of peddling, selling, dealing in or delivering any turpentine, kerosene, gasoline, benzine, naphtha, coal oil or product thereof, or any oil used for lubricating, illuminating or fuel purposes, from any tank-wagon or other wagon or vehicle in or upon any public street or way in the city of Chicago without first procuring a license therefor as hereinafter required, nor

unless such tank-wagon or other vehicle be equipped with drip-pans or other suitable devices for the purpose of preventing the spilling of any such oils upon the pavement in said streets or ways.

"Sec. 2. The annual license fee to be paid by every such person, firm or corporation as may be licensed under the provisions of this ordinance shall be at the rate of ten dollars ($10) for each and every wagon or vehicle used by such person, firm or corporation for the peddling, selling, dealing in or delivery of any of the commodities mentioned in section 1 hereof.

"Sec. 3. Every person, firm or corporation desiring a license to engage or continue in the business hereinbefore mentioned shall equip the wagon or wagons or other vehicle or vehicles to be used in such business, with drip-pans or other devices which shall effectually prevent the spilling of any of the commodities contained therein, which drip-pans or devices shall be subject to the approval of the commissioner of public works, and when such device or devices are approved by said commissioner of public works he shall furnish a certificate to that effect. Application for license shall be made in writing to the mayor, accompanied by the certificate of approval by the commissioner of public works. The application shall set forth the number of vehicles for which it is desired to procure a license, and the city clerk shall issue to the applicant the license desired, said license to be delivered to the applicant after the payment to the city collector of the license fee hereinbefore mentioned.

"Sec. 4. Every such license shall expire on the 30th day of April of each year following its issue, and shall be revocable by the mayor at any time on proof of violation by the licensee of any of the provisions of the ordinances of the city of Chicago now in force or which may hereafter be passed.

"Sec. 5. The city clerk shall furnish each applicant with a tag or plate bearing the number of the license issued to ap-

plicant for each vehicle licensed, which tag or plate shall be securely fastened to each such vehicle in some conspicuous place by the licensee, and kept there at all times when such vehicle is in use on any public street or way.

"Sec. 6. Every person, firm or corporation applying for any such license shall execute a bond to the city of Chicago in the penal sum of five hundred dollars ($500), with not less than two sureties to be approved by the mayor, conditioned that the party licensed will comply with all the provisions of this ordinance and of all other ordinances now in force or which may hereafter be passed touching the business licensed.

"Sec. 7. It shall be unlawful for any person, firm or corporation to spill any turpentine, kerosene, gasoline, benzine, naphtha, coal oil or any product thereof, or any oil used for lubricating, illuminating or fuel purposes, or allow any of said fluids to escape to or upon any asphalt pavement of the city of Chicago, or to operate or permit to be operated any tank-wagon or other vehicle from which any of said fluids are permitted to escape.

"Sec. 8. Every person, firm or corporation violating any of the provisions of this ordinance shall, upon conviction thereof, be subject to a fine of not less than twenty-five dollars ($25) nor more than two hundred dollars ($200).

"Sec. 9. The ordinance entitled 'An ordinance relating to the licensing of oil peddlers,' passed by the city council on May 20, 1901, is hereby repealed.

"Sec. 10. This ordinance shall take effect and be in force from and after its passage and due publication."

The bill alleges that Frederick J. Spiegler is, and has been for several years, engaged in the business of selling kerosene and gasoline in the city of Chicago, and uses in that business eight wagons commonly known as "tank-wagons," each wagon having a tank thereon in which oil is carried, which kerosene and gasoline are sold and delivered by the employees of said Spiegler from such wagons throughout the ·

city of Chicago; that Max Mildenberg is and has been selling oils for several years in the city of Chicago and uses forty to forty-four wagons, each of which is daily driven by an employee about the streets of the city of Chicago carrying cans containing kerosene or gasoline oil, in which cans such oils are delivered, but that said Mildenberg does not peddle oils in said city and said kerosene or gasoline is not poured from the can in making such delivery; that the Republic Oil Company has its principal office in the city of Cleveland, State of Ohio; that it has a warehouse in the city of Chicago where it stores oil and conducts the business of selling oils; that it uses four or more tank-wagons, from which it delivers oil to oil dealers only, in said city, but that it does not peddle or retail oil to consumers; and that the Standard Oil Company has its principal place of business in Whiting, State of Indiana, and conducts a branch of its business in the city of Chicago, where it sells kerosene, gasoline, naphtha and other oils; that it uses forty-five tank wagons, from which it delivers oil to oil dealers only, in said city, but that it does not peddle or retail oil to consumers; that there are in the city of Chicago between three and four thousand other persons or corporations engaged in the business of peddling, selling, dealing in or delivering turpentine, kerosene, gasoline, benzine, naphtha, coal oil or some product thereof, or some oil used for lubricating, illuminating or fuel purposes, from "tank-wagons or other wagons or vehicles," in or upon the public streets or ways of the city of Chicago; that on April 15, 1904, the city of Chicago instituted a suit against each of the complainants before a justice of the peace in Cook county, to recover from them, respectively, the fines imposed by said ordinance for alleged failure upon their part to comply with the provisions thereof by procuring a license or giving the bond required by the terms of said ordinance; that such proceedings were had that one or more judgments were rendered against each of the complainants, from which judgments they severally prosecuted appeals to the criminal court of Cook

county, where such appeals are now pending and undetermined; that on August 18, 1904, ten other like suits were commenced, one against Frederick J. Spiegler, three against Max Mildenberg, one against the Republic Oil Company and five against the Standard Oil Company for further supposed violations of said ordinance, which said suits are still pending and undetermined; that the city of Chicago threatens to bring other suits against the complainants and other dealers in oils in the city of Chicago for supposed violations of said ordinance. The bill avers that said ordinance is unconstitutional and void, and prays that the city of Chicago be restrained from prosecuting pending suits or from instituting other suits against the complainants, and from attempting to enforce the provisions of said ordinance against the complainants or other persons similarly situated to them. The city of Chicago filed an answer and a replication was filed thereto, whereupon, upon the motion of the city, a temporary injunction which had been granted upon the filing of the bill was dissolved and the bill was dismissed for want of equity. . An appeal has been prosecuted by the complainants to this court, and it is assigned as error that the superior court erred in not holding said ordinance invalid, unconstitutional and void.

ALFRED D. EDDY, and CHAUNCEY W. MARTYN, for appellants:

A court of equity will enjoin the prosecution of suits to impose fines under city ordinances when the ordinances are invalid, in order to prevent irreparable injury or to prevent a multiplicity of suits. *Chicago* v. *Collins,* 175 Ill. 445; *Cicero Lumber Co.* v. *Cicero,* 176 id. 9; *Stock Exchange* v. *McClaughry,* 148 id. 372.

The ordinance being penal in its nature must be strictly construed. *Pacific* v. *Seifert,* 79 Mo. 210; *Joyce* v. *East St. Louis,* 77 Ill. 156; *Krickle* v. *Commonwealth,* 1 B. Mon. 361; *Atkinson* v. *Goodrich Transp. Co.* 60 Wis. 141.

Any fair, reasonable doubt concerning the existence of a power is resolved against the corporation and the power denied. I Dillon on Mun. Corp. (4th ed.) sec. 89; *Corvallis* v. *Carlile,* 10 Ore. 141; *Williams* v. *Davidson,* 43 Tex. 34; *Hanger* v. *DesMoines,* 52 Iowa, 193; *Cook* v. *Dendinger,* 38 La. Ann. 263.

The power to pass an ordinance and impose a penalty must be strictly construed. *Kiel* v. *Chicago,* 176 Ill. 141.

The authority to exact a license must clearly appear and be strictly construed. *Collins* v. *Chicago,* 175 Ill. 459.

The word "peddler," as used in clause 41, section 63, of the City and Village act, is to be construed according to its accepted signification. *Emmons* v. *Lewiston,* 132 Ill. 384.

Persons who are merely delivering goods are not peddlers, and those who deal in or sell them are not necessarily peddlers. This ordinance purports to license and regulate oil peddlers. It, however, requires a license of every person, firm or corporation that engages in the business of "peddling, selling, dealing in or delivering" the several oils enumerated. It is therefore more broad and extensive than the city is entitled to pass, and void in so far as it applies to others than peddlers. *Delisle* v. *Danville,* 36 Ill. App. 659; *Emmons* v. *Lewiston,* 132 Ill. 380; *Twining* v. *Elgin,* 38 Ill. App. 356; *Mays* v. *Cincinnati,* 1 Ohio St. 268.

An ordinance requiring a license of all vehicles plying the streets, passed by virtue of a statute empowering cities to license wagons, drays, etc., used or let for hire, is void as to those vehicles not so used. *Covington* v. *Woods,* 98 Ky. 344.

An ordinance requiring a license for automobiles is invalid, because an ordinance that requires the owners of vehicles used for private business and pleasure, only, to submit to examinations and take out licenses, imposes a burden on one class of citizens not imposed on others, and is therefore void. *Chicago* v. *Banker,* 112 Ill. App. 94.

An ordinance that discriminates between particular classes of citizens, requiring from one what is not required from oth-

ers, is void for discrimination. *Lucas* v. *Macomb,* 49 Ill. App. 60; *Pierce* v. *Aurora,* 81 id. 670.

Section 3 of the ordinance provides that each wagon or other vehicle used in such business shall be equipped with drip-pans or other devices which shall effectually prevent the spilling of any of the commodities contained therein, and that such drip-pans or devices shall be subject to the approval of the commissioner of public works. It does not provide specifications for nor the general condition or character of such drip-pans or devices, and leaves it entirely to the discretion of the commissioner to require, in each particular instance, such devices as may suit his whim, caprice or pleasure. Powers vested by law in the city council cannot be delegated to an officer of the city. *Jenks* v. *Chicago,* 56 Ill. 398; *Railway Co.* v. *Chicago,* 144 id. 391; *East St. Louis* v. *Thomas,* 11 Ill. App. 283; *Negele* v. *Centralia,* 81 id. 334.

An ordinance that vests an arbitrary authority in a city officer is void. *Chicago* v. *Trotter,* 136 Ill. 430.

MACLAY HOYNE, (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellee:

Even if it be true that a court of equity may enjoin the enforcement of a void city ordinance at the instance of a person whose interests are impaired by it, a court of equity can not determine whether the ordinance has been violated, but merely whether it is void. *Chicago* v. *Collins,* 175 Ill. 445.

Where a corporation refuses to pay a valid license fee, it is not entitled to the aid of a court of equity to protect its business or franchises from the enforcement of such license fee. *Railway Co.* v. *City,* 24 So. Rep. 450.

The preservation of the public health and safety being indispensable to the existence of a municipal corporation, the power to enact ordinances to that end is inherent in a municipality and may be exercised as an implied power, whether expressly granted or not. *Gundling* v. *Chicago,* 176 Ill. 340; 177 U. S. 183.

The authority to exact license fees may be classified either under the police power or under the taxing power. In the absence of any indication to the contrary, it is presumed to be a branch of the police power. *Margolies* v. *City,* 50 Atl. Rep. 367; *Gordon Bros.* v. *City,* 47 S. E. Rep. 828; *Bessette* v. *People,* 193 Ill. 334.

Whether the license fees fixed by an ordinance are imposed upon an occupation as a tax or for regulation depends upon the substance of the ordinance rather than upon its form. If regulation was the end in view, the money received results from the exercise of the police power. *State* v. *Boyd,* 89 N. W. Rep. 417.

The legislature, or a city acting under its delegated powers, may impose a license upon a business for the purpose of regulation, and exact a bond. *Price* v. *People,* 193 Ill. 114.

The method of imposing license fees upon occupations is a matter within the judgment and discretion of the legislature or city council. *In re Lipschitz,* 95 N. W. Rep. 157.

Under the rule in this State, license fees, although imposed under the police power, may be imposed, not only as mere means of regulation, but also for revenue. *Carrollton* v. *Bazzette,* 159 Ill. 284; *Postal Tel. Co.* v. *Charleston,* 153 U. S. 692; *Wiggins Ferry Co.* v. *East St. Louis,* 102 Ill. 560; *Postal Tel. Co.* v. *Mayor,* 79 Md. 502.

An ordinance appearing on its face to have been passed pursuant to powers conferred upon the city to regulate occupations, with no inherent indications of its being a revenue act, is presumed to be a valid exercise under the police powers granted. *Blanchard* v. *Ivers,* 24 So. Rep. 66.

The reasonableness of a license fee is not to be determined by the extent of the business of a single individual or the manner in which business is affected by such license fee. *Launder* v. *Chicago,* 111 Ill. 291; *Railway Co.* v. *City,* 24 So. Rep. 450.

When a municipal government, in the exercise of the police power, imposes a license charge on a business which,

for the protection of the health of the community, requires daily inspection and supervision, the amount of the charge will be presumed to be reasonable, and not a tax for revenue. The courts will not seek to avoid an ordinance by nice calculation of the expense of enforcing police regulations. *Atkins* v. *Philips,* 26 Fla. 281.

Section 3 of the ordinance, which is the subject of this controversy, is not invalid because of the powers delegated to the commissioner of public works to approve drip-pans or other devices to prevent the spilling of oil. *Arms* v. *Ayer,* 192 Ill. 601.

Mr. JUSTICE HAND delivered the opinion of the court:

The first question raised upon this record is whether or not the superior court, sitting as a court of equity, had jurisdiction to entertain a bill to enjoin the enforcement by the city of Chicago of the provisions of said ordinance against complainants. The rule is well settled in this State that where a city is attempting to enforce an ordinance which is alleged to be invalid, against numerous persons whose interests are identical, such persons may file a bill, upon behalf of themselves and all other persons similarly situated, against the city for an injunction, and that a court of equity, in order to avoid a multiplicity of suits and to the end that the controversy may be determined in one suit, will, if the ordinance be found to be invalid, enjoin the enforcement thereof by the city. In *City of Chicago* v. *Collins,* 175 Ill. 445, three hundred and seventy-three bicyclists filed a bill in the circuit court of Cook county, on behalf of themselves and all other persons similarly situated, against the city of Chicago, to enjoin the city and its officers from enforcing against them an ordinance providing that all vehicles used upon the streets of the city of Chicago, including those for private use, for pleasure, etc., should pay an annual license fee, and that every person using any vehicle upon the streets of said city without having obtained a license therefor or having said

vehicle properly tagged, so that it would appear that the license fee thereon had been paid, should, on conviction, be fined a sum not less than $10 nor more than $50 for each offense. The circuit court took jurisdiction, and upon a hearing held the ordinance invalid and enjoined the city from enforcing the same. Upon an appeal to this court by the city it was held that a court of equity, in order to avoid a multiplicity of suits, will enjoin the enforcement of an illegal ordinance, where it appears that the interests of the complainants and many other persons are identical and injuriously affected by the ordinance. And in *Wilkie* v. *City of Chicago,* 188 Ill. 444, Wilkie and seventy-eight other master plumbers engaged in the plumbing business in the city of Chicago filed a bill against the city to enjoin the enforcement of an ordinance requiring each master plumber doing work in said city to obtain a license and pay a fee of $30 per year therefor, and imposing a penalty of not less than $50 nor more than $100 for each and every offense of doing any plumbing work in the city of Chicago without having obtained such license. The circuit court overruled a demurrer to the bill and granted an injunction restraining the city from enforcing the ordinance. The decree, upon appeal, was reversed by the Appellate Court for the First District, but upon a further appeal to this court the judgment of the Appellate Court was reversed and the decree of the circuit court was affirmed, and it was held that persons following a particular occupation, whose interests and liabilities are identical, may join in a suit in equity to restrain the enforcement of an illegal ordinance requiring them to take out a license, where the city is threatening each of them with prosecution for non-compliance with the terms of such ordinance and each prosecution would involve a determination of the validity of the ordinance. Here the city was attempting to enforce an ordinance against each of the complainants, which the complainants averred was unconstitutional and void. The prosecution of each of the complainants,

therefore, involved the same question, namely, the validity of said ordinance. It was also averred that some three or four thousand persons and corporations in the city of Chicago, besides the complainants, were engaged in handling oil in "tank-wagons or other wagons or vehicles" upon the streets of Chicago, and that the city had commenced numerous suits against the complainants for a violation of said ordinance, and were threatening to commence other suits of a like character against them and the other persons engaged in handling oil in "tank-wagons or other wagons or vehicles" upon the streets of Chicago, and under the *Collins case* and the *Wilkie case* we are of the opinion, in order to avoid a multiplicity of suits and that the controversy might be settled in one suit, the superior court had jurisdiction to entertain the bill at the suit of the complainants to determine the validity of said ordinance.

It is next urged that the ordinance is unconstitutional and void. In the *Collins case, supra,* it was held that a court of equity cannot determine the question whether an ordinance has been violated upon a bill to enjoin the enforcement thereof, but that its jurisdiction in such case is confined solely to a determination of the question whether the ordinance is valid. In this case the preliminary injunction having been dissolved upon motion, after the filing of an answer and replication, and the bill dismissed for want of equity, the motion to dissolve must be treated as a demurrer to the bill and the case decided upon the face of the bill as though no answer or replication had been filed.

It is first urged that the city was without power to pass the ordinance regulating the handling of the oils mentioned therein upon its streets from "tank-wagons or other wagons or vehicles." Section 1 of article 5 of the City and Village act (Hurd's Stat. 1903, p. 291,) confers, among others, the following powers upon cities and villages in this State: "Fourth, to fix the amount, terms and manner of issuing and revoking licenses." "Ninth, to regulate the use of the same,"

[streets, alleys, avenues, sidewalks, wharfs, parks and public grounds.] "Fifteenth, to regulate and prevent the throwing or depositing of ashes, offal, dirt, garbage, or any offensive matter in, and to prevent injury to any street, avenue, alley or public ground." "Twentieth, to regulate traffic and sales upon the streets, sidewalks and public places." "Forty-first, to license, tax, regulate, suppress and prohibit hawkers, peddlers, pawn-brokers, keepers of ordinaries, theatricals and other exhibitions, shows and amusements, and to revoke such license at pleasure." "Sixty-sixth, to regulate the police of the city or village, and pass and enforce all necessary police ordinances." "Seventy-eighth, to do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease." "Ninety-sixth, to pass all ordinances, rules, and make all regulations, proper or necessary, to carry into effect the powers granted to cities or villages, with such fines or penalties as the city council or board of trustees shall deem proper: *Provided*, no fine or penalty shall exceed $200, and no imprisonment shall exceed six months for one offense."

In *Gundling* v. *City of Chicago,* 176 Ill. 340, it was held an ordinance may derive its validity from several different grants of power, and does not depend upon any single clause or section of the statute containing such grant. The various oils named in the ordinance are known to all to be highly combustible, and under some conditions and unless handled with care, explosive, and they have been recognized by the legislature of this State (City and Village act, art. 5, sec. 1, subd. 65,) and by this court (*Standard Oil Co.* v. *City of Danville,* 199 Ill. 50,) to be dangerous in character. By the City and Village act the city of Chicago is given power to pass and enforce all necessary police ordinances. By the word "necessary," indispensable was not intended, but power was conferred upon the city to pass all ordinances which would be conducive to the promotion of the health, safety and welfare of its inhabitants, which power we think may

reasonably be held to include the power to pass an ordinance regulating in a reasonable manner the handling of the oils mentioned in the said ordinance, in "tank-wagons or other wagons or vehicles" upon the streets of the city of Chicago.

In discussing the exercise of the police power in *Price* v. *People,* 193 Ill. 114, on page 117, it was said: "It is an attribute of sovereign power to enact laws for the exercise of such restraint and control over the citizen and his occupation as may be necessary to promote the health, safety and welfare of society. This power is known as the police power. In its exercise the General Assembly may provide that any occupation which is the proper subject of the power may not be pursued by the citizen except authorized by a license issued by public authority so to do. Such enactment may require the payment of a fee and the execution of a bond with security, conditioned in view of the objects and purpose of the act, as a prerequisite to the issuance of such license."

· And in *Patterson* v. *Johnson,* 214 Ill. 481, in considering the power of the city of Chicago to pass an ordinance regulating the construction or removal of wooden buildings within its corporate limits outside the "fire limits," it was said (p. 488) : "While no express power has been pointed out authorizing· municipalities organized under the City and Village act to pass ordinances regulating the construction or removal of wooden buildings within their corporate limits outside the 'fire limits,' the city council or board of trustees of a city or village organized under that act has the power to declare what shall be considered nuisances and to abate and remove the same, and to regulate the police of the town, and we think the power to regulate the construction or removal of wooden buildings anywhere within the corporate limits of such municipalities is clearly implied as incident to those powers, although such powers are conferred upon such municipalities only in general terms."

And in *Chicago, Burlington and Quincy Railroad Co.* v. *Haggerty,* 67 Ill. 113, in discussing the power of a town in

this State to pass an ordinance regulating the rate of speed of railway trains passing through said town, on page 115, it was said: "There is no grant of power to this town, in express terms, to regulate the rate of speed of railway trains passing through the town, but by its charter (Private Laws of 1857, pp. 540, 541,) the board of trustees of the town have the power to declare what shall be considered as nuisances and to prevent and remove the same, and to regulate the police of the town, and to make such ordinances as the good of the inhabitants of the town may require. Under these powers we think the town possessed the authority so to order the use of private property within its limits as to prevent its proving dangerous to the safety of the persons and property of citizens; and we view the ordinance in question as but a police regulation for the preservation of the safety of persons and property, the adoption of which was no more than a fair exercise of the police power vested in the town."

We think it obvious the legislature has conferred upon cities and villages power to regulate the handling of oils from "tank-wagons or other wagons or vehicles" upon the public streets of such municipalities, and that the ordinance in question cannot be said to be void for want of power in the city to legislate upon such subject.

It is next urged that the ordinance is void by reason of the provisions found in section 3, to the effect that each "tank-wagon or other wagon or vehicle" from which oil is handled shall be equipped with drip-pans or other devices which shall effectually prevent the spilling of the commodity contained therein, which drip-pans or devices shall be subject to the approval of the commissioner of public works, as it is contended said section leaves the kind or character of said drip-pans or devices which shall be used, entirely to the discretion, whim, caprice and pleasure of the commissioner of public works, and it is said the effect of such provision is to delegate to him legislative power, which should be exercised by the common council. In *Arms* v. *Ayer,* 192 Ill. 601,

the constitutionality of the statute providing for the erection
of fire-escapes upon certain buildings named in said statute
was attacked upon the ground that legislative power was
conferred upon the inspectors of factories, in that such in-
spectors were given power by the statute to determine the
number, location, material and method of construction of
the fire-escapes which the act provided should be erected up-
on the buildings specified in the act. The contention was not
sustained but the act was held to be constitutional. We think
the principles there announced are applicable to the case at
bar. This ordinance provides that each "tank-wagon or other
wagon or vehicle" from which the designated oils shall be
delivered upon the streets of the city shall be equipped with
drip-pans or other devices, which drip-pans or devices shall
effectually prevent the spilling of the commodity and which
drip-pans or other devices shall be approved by the commis-
sioner of public works of said city. The power to legislate is
not conferred by said ordinance upon the commissioner of
public works, but he is only given power to approve the drip-
pans or other devices with which the said "tank-wagons or
other wagons or vehicles" are equipped. The power thus con-
ferred upon the commissioner of public works pertains solely
to the execution of the ordinance, and not to the passage
thereof. In the *Arms case, supra,* the distinction between the
power to pass a law, which may not be delegated, and the
power to carry it into execution, which may be, was pointed
out on page 611. The court there said, quoting from Suther-
land on Statutory Construction : "The true distinction is be-
tween a delegation of power to make the law, which involves
a discretion as to what the law shall be, and conferring an au-
thority or discretion as to its execution, to be exercised under
and in pursuance of the law. The first cannot be done; to the
latter no objection can be made." In *People* v. *Reynolds,* 5
Gilm. 1, the court said (p. 13) : "While the legislature may
not divest itself of its proper functions or delegate its general

legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly or advantageously, do itself. Without this power legislation would become oppressive, and yet imbecile." Under the authority of *Arms* v. *Ayer, supra,* we are of the opinion the power conferred by section 3 upon the commissioner of public works to approve the drip-pans or other devices which the ordinance provides shall be attached to "tank-wagons or other wagons or vehicles" from which the designated oils are delivered upon the streets of said-city does not render that section of the ordinance void.

It is next contended that section 4 of the ordinance, which provides that licenses granted under said ordinance may be revoked by the mayor at any time upon proof of a violation by the licensee of any of the provisions of the ordinances of the city of Chicago in force at the date of the passage of the ordinance or that may thereafter be passed, confers judicial power upon the mayor. We do not agree with such contention. The provision found in the ordinance is authorized by the statute and is one usually found in similar ordinances, and such right of revocation is a proper one, and one of the most effectual means which the city has of enforcing a compliance with the terms of such ordinances. It is said, however, the right of revocation is not confined to a violation of the ordinances covering the subject matter embraced in said ordinance, but is broad enough to cover a violation of any of the ordinances of the city of Chicago. It must be admitted the ordinance is inartificially drawn. In construing an ordinance, if two constructions can be placed thereon, one of which would render it meaningless and void and one of which would make it a valid enactment, the one which would make the ordinance valid should be adopted. We think the right of revocation found in this ordinance is confined to a violation of the ordinances of the city upon the subject covered by the ordinance now under consideration, and not a violation of the ordinances, generally, of the city.

It is also urged that section 6 of the ordinance is invalid because it requires the bond provided for in that section to be given to be conditioned that the licensee will comply with all the provisions of the ordinance and any other ordinance touching the business licensed, thereafter passed, without limiting the liability on the bond to the life of the license. This position is without force. The bond provided for in that section would become void at the expiration of the period covered by the license in case no breach of its terms had occurred during that period.

It is also urged that a license fee of $10 per annum per wagon is so high as to amount to a prohibition upon the business sought to be licensed. The ordinance, when properly construed, means that a license fee of $10 should be paid for each "tank-wagon or other wagon or vehicle" for a full year or a proportionate part of that sum for a fractional part of a year, and when so construed the license fee fixed by the ordinance is not unreasonably high,—at least not so high as to justify a court in holding the ordinance void by reason of the amount of the license fee fixed by the ordinance. In *Price* v. *People, supra,* it was held that the amount fixed by the legislative power to be paid as a license fee is conclusive, unless it is manifest that its real purpose is to raise revenue under the guise of a police regulation or to prohibit the exercise by the citizen of a lawful calling by means of an oppressive license fee.

The appellants have raised other objections to the validity of said ordinance, none, however, which we deem of controlling force. We are of the opinion said ordinance, by its terms, applies only to sales and deliveries of the designated oils made from tank-wagons or other similar wagons and vehicles upon the public streets and ways of the city of Chicago, and that it does not apply to sales and deliveries made in cans or other unbroken packages, although delivered in wagons or other vehicles. The object of the ordinance clearly is to prevent the oils named therein from being han-

dled upon the streets from tank-wagons or other similar vehicles in such manner as to be spilled or otherwise allowed to escape upon the surface of the street. This construction is clear from the fact that it is specifically provided that tank-wagons, etc., shall be equipped with drip-pans or other devices. When thus construed the ordinance is not unreasonable and is clearly within the police power of the city.

Finding no reversible error in this record the decree of the superior court will be affirmed. *Decree affirmed.*