JAMES T. KEARNEY et al. Appellees, vs. THE CITY OF CAN-
TON et al. Appellants.

*Opinion filed June 22, 1916.*

1. ORDINANCES—*courts of law have jurisdiction to determine validity of ordinance.* Whether a city has exceeded its power in adopting an ordinance upon a subject which it is authorized to legislate about is a legal question which courts of law have jurisdiction to determine in a suit brought to enforce the provisions of the ordinance; and a court of equity will not enjoin the enforcement of the ordinance on the ground it is invalid, except when necessary to prevent irreparable injury or a multiplicity of suits.

2. SAME—*what not ground for enjoining enforcement of ordinance.* In order to give a court of equity jurisdiction to enjoin the enforcement of an ordinance for the purpose of preventing a multiplicity of suits it should appear that the complainants and others are affected alike by the ordinance; and the mere fact that some may be affected by one section of the ordinance and others by various other sections is not sufficient, where it is not alleged in the bill that the ordinance has been violated by any of the complainants or that any suits have been begun against them.

3. SAME—*mere fact that ordinance is void is not, alone, ground for enjoining its enforcement.* Under no circumstances will a court of equity entertain a bill to enjoin the enforcement of an ordinance on the ground, alone, that it is void, but those seeking to enjoin its enforcement must allege facts showing that their interests are affected by it.

4. SAME—*when equity will not take jurisdiction on ground of avoiding a multiplicity of suits.* Courts of equity are reluctant to take jurisdiction of a suit to enjoin the enforcement of an ordinance upon a subject which the municipality has the power to legislate about, and will not do so on the ground of preventing a multiplicity of suits unless the ordinance affects a right or interest common to all the complainants. (*Chicago* v. *Collins,* 175 Ill. 445, and *Wilkie* v. *Chicago,* 188 id. 444, distinguished.)

APPEAL from the City Court of Canton; the Hon.
HARRY C. MORAN, Judge, presiding.

FLOYD F. PUTMAN, for appellants.

O. J. BOYER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal by the city of Canton from a decree of the city court of that city holding a certain ordinance of the municipality null and void and enjoining its enforcement. The court certified the validity of a municipal ordinance was involved and that the public interest required the appeal be taken direct to this court. The record is therefore brought directly here by appeal for review.

The bill was filed by eight complainants, who alleged therein that they were actual, *bona fide* residents of the city of Canton; that four of them named "have been engaged in the business of retailing ades or carbonated or aerated drinks and other like drinks" in said city; that another complainant named "has been engaged in the manufacture and wholesale of ades or carbonated and aerated drinks and like drinks" in said city; that another complainant named is the owner of a certain building "equipped with screens, shades, blinds and booths in such a manner that a view from the street is more or less obstructed;" that the building and its equipment are of the value of $10,000, and to remodel and change it so that the screens, blinds, shades and booths would not obstruct a view of the interior would subject the owner to a large expense. The bill alleged all of complainants are of a social character and turn of mind, and desire the right, when entertaining friends at their homes, to indulge in the moderate drinking of spirituous, vinous, malt or fermented liquors and to give such friends a drink. The ordinance is set out in full in the bill as a part thereof and is as follows:

"Sec. 1. That whoever shall by himself or another, either as principal, clerk or servant, within the corporate limits of the city of Canton, directly or indirectly sell, keep for sale, barter, exchange, give away or in any manner dispose of, or take an order or make an agreement for sale or delivery of any intoxicating liquor, or spirituous, vinous, malt or fermented liquor, or any mixture of any said liq-

uors, or any drinks which contain any spirituous, vinous, malt or fermented liquor in any quantity whatsoever, shall be fined not less than twenty-five ($25) dollars nor more than two hundred ($200) dollars for each and every offense.

"Sec. 2. Whoever shall within said corporate limits directly or indirectly keep or maintain by himself or by associating or combining with others, or who shall in any manner aid, assist or abet in keeping or maintaining, any clubroom or other place in which any intoxicating liquor or spirituous, vinous, malt or fermented liquor, or any mixture of any of said liquors, or any drinks which contain any spirituous, vinous, malt or fermented liquor in any quantity whatsoever, is received or kept for the purpose of use, barter, exchange or sale as a beverage, or for distribution or division among the members of any club or association, by any means whatever, and whoever shall use, barter, exchange or sell, or assist or abet another in bartering or exchanging, any intoxicating liquor or spirituous, vinous, malt or fermented liquor, or any mixture of any of said liquors, or any drink which contains any spirituous, vinous, malt or fermented liquor in any quantity whatsoever so received or kept, shall upon conviction thereof be fined not less than twenty-five ($25) dollars nor more than two hundred ($200) dollars for each and every offense.

"Sec. 3. All places within said corporate limits where orders are taken or agreement made for the sale or delivery of any intoxicating liquors or spirituous, vinous, malt or fermented liquor, or any mixture of said liquors are sold, given away, bartered, exchanged or in any manner disposed of or kept for sale, or are received or kept for the purpose of use or distribution or division among the members of any club or by any means whatsoever, shall be taken and held and are declared to be a nuisance and may be abated as such; and whosoever shall keep any such place, either as principal, clerk or servant, shall on conviction thereof be

fined not less than fifty ($50) dollars nor more than two hundred ($200) dollars, and it shall be part of the judgment, upon conviction of the keeper, that the place so kept shall be shut and abated by the chief of police or mayor until the keeper shall give bond, with sufficient security to be approved by the court, in the penal sum of one thousand ($1000) dollars, payable to the said city, conditioned that he shall not violate or permit any violation of this ordinance at such place: *Provided,* that if the keeper refuses or neglects to abate such nuisance instanter after being notified so to do by the chief of police or mayor of said city the mayor may order any such place summarily shut up and abated.

"Sec. 4. Whoever knowingly permits any building or premises, or any part thereof, within the said corporate limits owned or leased by him or under his control to be used within which to keep or maintain any clubroom or other place in which any intoxicating liquors or any spirituous, vinous, malt or fermented liquor is received or kept for the purpose of use, gift, barter, exchange or sale as a beverage or distribution or division among the members of any club or association by any means whatsoever, or to be used within which to sell, give away or take orders for the sale or delivery of any intoxicating liquor or any spirituous, vinous, malt or fermented liquor, or any drinks which contain any spirituous, vinous, malt or fermented liquor in any quantity whatsoever, or after being notified of such use omits to take all reasonable measures to eject therefrom the person or persons so using the same, shall be deemed guilty of suffering a nuisance to exist, and on conviction shall be fined not less than fifty ($50) dollars nor more than two hundred ($200) dollars for each and every day, or fraction thereof, that he shall permit any such building or premises, or any part thereof, to be so used.

"Sec. 5. Whoever shall by himself or another, directly or indirectly, within said corporate limits, display or post, or suffer to remain displayed or posted, in, on or about any

building or premises occupied by him, any sign or other ad-
vertisement indicating that intoxicating liquor or spirituous,
vinous, malt or fermented liquor, or any so-called temper-
ance drinks which contain any spirituous, vinous, malt or
fermented liquor, are kept or dealt in at such building or
premises, or shall suffer any sign or advertisement of any
wholesale or retail liquor dealer to be displayed or posted
or remain displayed or posted in, on or about any building
or premises occupied, owned or leased by him or under his
control, shall be deemed guilty of suffering a nuisance to ex-
ist, and upon conviction thereof shall be fined not less than
twenty ($20) dollars nor more than two hundred ($200)
dollars for each and every day, or fraction thereof, he shall
permit any such sign to be posted or displayed.

"Sec. 6. Whoever, in connection with the transpor-
tation or conveyance of any spirituous, vinous, malt, fer-
mented or intoxicating liquor, shall by himself or another,
either as principal, clerk or servant, or in any manner, de-
liver or cause to be delivered any of said liquor within said
corporate limits to any minor or to any person intoxicated,
or to any person in the habit of getting intoxicated, or to
any person under a fictitious name, or to any person other
than the person to whom it has been consigned, unless upon
the written order, in each instance, of the *bona fide* con-
signee, or deliver any said liquor to any person whomsoever
without first having entered in a well-bound book which he
shall provide for the purpose and for that purpose only, the
date of the reception by him of each vessel or package of
said liquor received, and the true name and address of the
consignor and the date of its delivery by him, and the true
name of the person to whom and the place where such liq-
uor is delivered, or fail or neglect to procure a receipt for
the same in said book from the person to whom it is de-
livered, or to keep such book open to the full and free in-
spection of all public officers and their deputies at all times
during business hours, or deliver any such liquor to any

person whomsoever on the first day of the week, commonly called Sunday, or between sunset and sunrise, or erases or removes the name of the consignor or consignee from any package of any said liquor, shall be fined not less than twenty-five ($25) dollars nor more than two hundred ($200) dollars for each and every offense.

"Sec. 7. Whoever shall by himself or another, either as principal, clerk or servant, directly or indirectly sell, barter, exchange or give away within said city any cider, ades or carbonated or aerated drinks at retail without first having obtained a license therefor in accordance with the provisions of this ordinance, shall be fined not less than twenty ($20) dollars nor more than one hundred ($100) dollars for each offense. The giving away of any such beverages or other shifts or devices to evade the provisions of this ordinance shall be deemed and held unlawful selling.

"Sec. 8. The city council may, in its discretion, grant license for a term of one year or less to sell or dispose of the beverages mentioned in section 7 of this ordinance to any person or persons who may apply in writing therefor, upon the applicant filing a petition setting forth the particular building or place to be occupied by him or them for that purpose and paying the sum of twenty-five (25) cents per year, payable in advance; and said petition shall state that the person or persons therein named will, if license be granted them, comply with all requirements of the laws of the State of Illinois or of the ordinances of the city of Canton, Illinois, now in force licensing and regulating the sale of the beverages named in section 7 of this ordinance, which said petition shall be filed with the city clerk, who shall issue such license upon the order of the city council, and all licenses shall be conditioned that the person or persons to whom the same is granted shall comply with all the requirements of the laws of the State of Illinois or of the ordinances of the city of Canton, Illinois, now in force or such as may be hereafter in force. If the owner

or keeper shall by himself or another, either as principal, clerk or servant, directly or indirectly violate the provisions of this section, the chief of police or the mayor of said city of Canton may revoke the said license and order such place summarily shut up and abated. The power is hereby expressly reserved to the mayor and city council to refuse to grant any and all such licenses to any person or persons applying therefor, if in their opinion such refusal would be to the best interests of the city aforesaid.

"Sec. 9. All soft drink parlors or other places of business where carbonated or aerated or other so-called temperance drinks are sold, bartered, exchanged or given away, shall have all window shades, blinds or· screens raised, opened or removed at all times, so that a free and unobstructed view of the bar or counter or tables and the interior shall be had from the street and exterior of such places of business. Any person or persons violating any of the provisions of this section shall forfeit and pay to the said city of Canton not less than twenty-five ($25) dollars nor more than one hundred ($100) dollars for each offense. All subterfuges or evasions for the purpose of avoiding the requirements of the provisions of this section are hereby declared to be within the meaning and intent of this ordinance and shall be deemed violations hereof.

"Sec. 10. Whoever attempts to commit any offense prohibited by this ordinance and does any act toward it but fails or is intercepted or prevented in its execution, shall upon conviction thereof be fined not less than twenty-five ($25) dollars nor more than two hundred ($200) dollars for each and every offense.

"Sec. 11. That the invalidity of any portion of this ordinance shall not affect the validity of any other portion hereof which can be given effect without such invalid part.

"Sec. 12. This ordinance, or any part hereof, shall not be construed so as to affect any right or liabilities or action

273 — 33

now pending or cause of action now existing that may have accrued before this ordinance shall take effect.

"Sec. 13. This ordinance shall take effect and be in force from and after its passage and due publication."

The bill alleged the ordinance, and each section of it, is unconstitutional and contrary to public policy; that the city of Canton had no authority to pass it and that it is entirely void. The bill further alleged five thousand residents of the city were affected by section 1 of the ordinance, two thousand affected by section 2, the owners of twenty buildings equipped for soft drink places affected by sections 3, 4 and 5, and numerous common carriers affected by section 6. It is further alleged that the city, by and through its officers, has asserted an intention to enforce the said ordinance, and has instituted an action in the city court of Canton against J. L. Eggert to recover penalties for the violation of certain sections of the ordinance and has threatened to prosecute complainants and others if they should violate the ordinance, and it is alleged that unless restrained by injunction from enforcing the ordinance numerous prosecutions under said ordinance will be instituted. The prayer of the bill is that the city and its police officers, and all other officers of the city, be enjoined from prosecuting complainants and all other persons for violations of said ordinance or any section thereof, and that said ordinance and every section of it be declared null and void. A temporary writ of injunction was ordered by the master in chancery in vacation. Upon the convening of the court defendants demurred to the bill, which demurrer was overruled and they answered, denying that the ordinance was invalid and denying the right of complainants to invoke the aid of a court of equity or that they were entitled to the relief prayed.

The first question presented for our determination is the jurisdiction of a court of equity to entertain the bill. The ordinance is aimed at the regulation and control of traffic in intoxicating liquors within the corporate limits of

the city of Canton. The subject is within the scope of the power of the city to legislate upon. Whether the city has exceeded its power in adopting the ordinance here involved is a legal question, which courts of law have jurisdiction to decide in a suit brought under the provisions of the ordinance to enforce it. That the ordinance is invalid may be interposed as a defense in a court at law in such a suit, and the general rule is that courts of equity will not interfere by injunction to prevent the enforcement of an ordinance on the ground that it is invalid. (*Poyer* v. *Village of Des-Plaines,* 123 Ill. 111.) There are two exceptions to the general rule that a court of equity will not take jurisdiction in such cases: (1) Where it is necessary to prevent irreparable injury; and (2) to prevent a multiplicity of suits. While that is a recognized head of equitable jurisdiction, it is by no means of universal application to every situation where it is sought to adjudicate in a court of equity a right for which the law affords a remedy on the ground that it will avoid a multiplicity of suits. Courts are not agreed as to the classes of cases in which equitable jurisdiction may be invoked to prevent a multiplicity of suits, but in its last analysis the principle upon which the exercise of the jurisdiction is based is, that where it appears a multiplicity of suits will be required to establish a disputed right the remedy at law is not deemed adequate, and where several parties seek to enjoin one person from the prosecution of actions at law there must be a community of interest between the complainants, at least in the questions of law and fact upon which the issue depends. (1 Pomeroy's Eq. Jur. sec. 4, p. 356 *et seq.*)

The rights upon which complainants base their claims to the relief prayed are predicated upon the following allegations of the bill: (1) They are all citizens and residents of the city of Canton; (2) four of them "have been engaged in the business of retailing ades or carbonated or aerated drinks and other like drinks" within said city, one of them

"has been engaged in the manufacture and wholesale of ades or carbonated and aerated drinks and like drinks" within said city, and one of them is the owner of a building in said city equipped with screens, shades, blinds and booths in such manner as to obstruct the view of the interior from the street, and to change the building so as to remove the obstructions to the interior view from the street would necessitate large expense; (3) all of complainants are of a sociable character and turn of mind, and desire, when entertaining a friend, to indulge in a moderate drink of intoxicating liquor and to give such friend a drink; (4) that five thousand residents of the city are affected by section 1 of the ordinance, two thousand are affected by section 2, twenty buildings by sections 3, 4 and 5 and numerous common carriers by section 6; (5) that the city officials threaten to enforce the ordinance, that they have instituted suit against J. L. Eggert for its violations, and have threatened the prosecution of complainants and many others "in case they should violate the provisions of said ordinance."

These averments do not make a case where the interposition of a court of equity is justified. No one could be injuriously affected by the ordinance except parties engaged in doing the things it forbids. If no one does or has done any of the things prohibited no one will be injured. The prohibitions and penalties of the ordinance are limited in their effect to those who violate the prohibitions. The bill cannot be maintained on behalf of the public or any number of persons on the theory that they desired to or might at some future time engage in business or acts in violation of the ordinance, and on that ground seek to have the validity of the ordinance determined in a court of equity before doing any of the things prohibited. So far as appears from the bill, at the time the suit was begun none of complainants were engaged in any business or doing any acts in violation of the ordinance. It is not alleged that any of the complainants have violated the ordinance and that suits

against them for such violations have been instituted or threatened for such violations. They allege some of them have been engaged in retailing and another in maufacturing ades, carbonated or aerated waters and other like drinks, that another owns a building in which are screens, shades, blinds and booths, and that the city officials threaten to prosecute them "in case they should violate the provisions of said ordinance." It is not claimed that all of complainants are or will be affected by the same provisions of the ordinance. The allegation is that some of them are affected by one section and others by other sections.

We are not to be understood as in any way intimating that the ordinance, or any part of it, is valid or invalid, but it is possible that part of an ordinance may be held invalid and other parts valid and the invalid portions not affect the valid portion in such a way as to require holding the whole ordinance void. In such case there is no such interest common to all parties, some of whom are affected by the provisions of one section and others by the provisions of other sections, as to give a court of equity jurisdiction to entertain a bill to enjoin its enforcement to prevent a multiplicity of suits. It is true, the bill alleges the ordinance is void as a whole, but it must also allege and show that all of complainants are alike affected by it. (*Spiegler* v. *City of Chicago,* 216 Ill. 114.) Under no circumstances will a court of equity entertain a bill to enjoin the enforcement of an alleged void ordinance on the ground, alone, that it is void, but those seeking to restrain its enforcement must allege facts showing their interests are affected by it. No case, so far as we are informed, has ever gone so far as to sustain a bill to determine in advance the validity of an ordinance at the instance of parties who desire to engage in a business or perform acts forbidden by the ordinance. Courts of equity are reluctant to take jurisdiction of a case to enjoin the enforcement of a municipal ordinance upon a subject matter which the municipality has the power to legislate

about, and will not do so to prevent a multiplicity of suits unless the ordinance affects a right or interest common to all the complainants.

*Davis* v. *Fasig, 27* N. E. Rep. (Ind.) *726,* was an action brought to enjoin the enforcement of an ordinance by the prosecution of suits for its violation. The ordinance related to the closing of saloons on Sundays, election days and holidays. The complaint alleged the petitioner was a citizen and tax-payer of the city and engaged in keeping a saloon for the sale of intoxicating liquors, and that he brought the suit on behalf of himself and 170 other persons similarly situated. The petition also alleged the city had commenced prosecutions against the plaintiff and others for alleged violations of the ordinance and unless restrained would commence other prosecutions. It was alleged the ordinance was unconstitutional, unreasonable, illegal and void, and the prayer was that its enforcement and prosecutions thereunder be enjoined. The ordinance consisted of four sections. The court did hold the ordinance was not subject to the objections charged in the complaint, but said : "Some provisions of an ordinance might be void and others valid and enforcible, and unless the plaintiff is so placed as to be injured by the void part he is in no condition to question the validity of the ordinance." The principle applies here. Complainants do not claim they are all affected by every provision of the ordinance, and if the bill should be sustained there is the possibility that provisions of the ordinance affecting some might be sustained and provisions affecting others held void. We know of no case presenting such a situation where a court of equity has taken jurisdiction, and the principles underlying the jurisdiction in cases of this character will not admit of the jurisdiction in this action.

Much reliance is placed by complainants upon *City of Chicago* v. *Collins,* 175 Ill. 445, and *Wilkie* v. *City of Chicago,* 188 id. 444. There are distinguishing features be-

tween those cases and this case but only one need be mentioned. In each of those cases all the complainants and others on behalf of whom the suits were brought were alike affected by the ordinances, and every provision of them, from the time of their passage. They were at that time and at the time of bringing the suits engaged in doing the things prohibited by the ordinances.

The city court of the city of Canton should have sustained the demurrer to the bill. Its decree will be reversed and the cause remanded, with directions to sustain the demurrer and dismiss the bill.

*Reversed and remanded, with directions.*