SUPERIOR PISTON RING CO. *v.* BROWN, ANTHONY & CO., INC.

1. BROKERS—LICENSES—BLUE SKY LAW—EMBEZZLEMENT—INSOLVENCY.

Where purchasers had agreed to buy and company had agreed to sell at an agreed price an agreed number of shares of stock prior to expiration of license of the broker handling the transaction, but after the license had expired the broker, then insolvent, embezzled the remittances made by the purchasers, the purchasers had a right of action under the blue sky law (2 Comp. Laws 1929, §§ 9790, 9799, as amended by Act No. 37, Pub. Acts 1935).

Rights of a person discharging a duty owed by another and his indemnity, see Restatement, Restitution, § 79.

Restitution of benefits tortiously acquired by conversion, see Restatement, Restitution, § 128.

Equitable remedies by way of subrogation, see Restatement, Restitution, § 162.

2. Assignments—Rights of Action Against Insolvent Broker—Embezzlement.

Assignment of rights of action of purchasers of stock whose remittances were embezzled by insolvent broker placed assignee in the same place as the assignors so far as legal rights were concerned.

3. Brokers—Expiration of License under Blue Sky Law—Surety—Assignment.

Liability of surety on bond of securities broker to assignee of purchasers of stock who had consummated their purchases prior to expiration of broker's license but whose subsequent remittances were embezzled by the broker, then insolvent, is not altered by fact that assignee, the issuer of the stock sold, voluntarily reimbursed the purchasers for the moneys paid the broker and neither the statute, license nor bond contains a date of expiration for the bond (2 Comp. Laws 1929, §§ 9790, 9799, as amended by Act. No. 37, Pub. Acts 1935).

4. Bonds—Statutes—Construction.

Bonds required by statute should be construed so as to accomplish the purpose for which they are required.

5. Licenses—Blue Sky Law.

The blue sky law affords no protection to persons dealing with unlicensed dealers, brokers and salesmen (2 Comp. Laws 1929, § 19.741 *et seq.*).

Chandler, J., dissenting.

Appeal from Wayne; Toms (Robert M.), J. Submitted April 11, 1940. (Docket No. 102, Calendar No. 41,082.) Decided September 6, 1940. Rehearing denied November 13, 1940.

Assumpsit by Superior Piston Ring Company, a Michigan corporation, against Brown, Anthony & Company, a Michigan corporation, and Maryland Casualty Company, surety, to recover proceeds from the sale of stock subscriptions and to recover on a bond. Judgment for plaintiff. Defendant surety appeals. Affirmed.

*Mason, Davidson & Mansfield* (*H. Thomas Ellerby,* of counsel), for appellant.

*Charles H. Burnham* and *R. G. Leitch,* for appellee.

CHANDLER, J. (*dissenting*). During the year 1937, plaintiff offered for sale through Brown, Anthony & Company, Incorporated, a brokerage corporation, an issue of capital stock. Brown, Anthony & Company, by approval of an application filed by it on or about October 19, 1936, had been licensed to deal in securities and had furnished the bond required by the provisions of 2 Comp. Laws 1929, § 9790, as amended by Act No. 229, Pub. Acts 1931, and Act No. 37, Pub. Acts 1935 (Stat. Ann. § 19.762), the defendant Maryland Casualty Company being the surety thereon.

During 1937 and prior to June 30th of said year, the expiration date of the license of Brown, Anthony & Company, said company through its agent, Loren J. Kuehnle, solicited subscriptions for shares of the proposed issue of stock being offered by plaintiff. The subscriptions, in writing, were forwarded to the Detroit office of the brokerage company, and in due time each subscriber received a confirmation of sale, together with a letter acknowledging receipt of the subscription.

The license of Brown, Anthony & Company expired on June 30, 1937, and was not renewed. After said date, the salesman, Mr. Kuehnle, collected the amount of the subscriptions from the various subscribers, payment in each instance being made by a check which was cashed by the brokerage company. However, the certificates of stock were never delivered to the subscribers, nor did plaintiff receive the sums paid by the subscribers therefor from the broker. Thereafter, plaintiff reimbursed each of said subscribers for the sums so paid by them, and received an assignment of any claims they might have against Brown, Anthony & Company and its surety.

Thereupon, this suit was instituted to recover said sums against the insolvent principal and its surety.

The trial court entered judgment against both defendants and the surety has appealed, claiming that its liability as surety on the bond terminated on June 30, 1937, the expiration date of the license of the principal.

It appears to be conceded that Brown, Anthony & Company failed to comply with the provisions of the statute under which it was licensed, and the only question before us is whether or not the liability of the surety on the bond terminated with the expiration of the license.

The statute contains no provision relative to the length of time the bond shall remain in force and the bond itself in terms does not limit liability to the license period.

However, the bond is required in express terms for the protection of the public against the acts of the licensee in violation of the provisions of the statute under which the license is granted. In *Timmerman* v. *Hartford Accident & Indemnity Co.,* 243 Mich. 338, an action was brought to recover on a dealer's bond which had been issued by the defendant surety company in connection with a proposed application for a dealer's license for defendant Bultman. No application for a license was made by Bultman after the bond was issued; the bond was never filed; nor was a license ever granted. Under this state of facts, the plaintiffs sought to recover from the surety on the bond. In denying recovery, it was pointed out that the bond was executed by the surety in furtherance of a statutory purpose, that is, the protection of the public from the unlawful acts of those to whom a license had been issued in accordance with the provisions of the statute, and that the license, the subject matter of the bond, never existed. The foundation of the decision denying liability rests upon the fact that no license existed.

If there is no liability under the bond for acts occurring prior to the granting of the license because of the nonexistence of such license, by what reason can it be said that there is liability for acts occurring after the license has expired? The bond becomes effective upon its acceptance and the issuance of a license by the securities commission; it is for the protection of the public during the life of the license from the prohibited acts of a licensed dealer; and liability terminates thereunder with the expiration of the license.

The unlawful acts of the agent of Brown, Anthony & Company consisted in the misappropriation of funds at various times subsequent to the expiration of the license, and it follows that no recovery therefor can be had against the surety on the bond.

Counsel for appellee contend that the issue involved in the instant case is identical with that involved in *City of Detroit* v. *Blue Ribbon Auto Drivers' Ass'n,* 254 Mich. 263 (74 A. L. R. 1306). The trial judge was of the opinion, and so stated, that the question raised by this appeal was the same as that before the court in the *Blue Ribbon Case,* and based his conclusion of liability thereon.

The writer of this opinion has diligently endeavored either to harmonize his views with those expressed in *City of Detroit* v. *Blue Ribbon Auto Drivers' Ass'n, supra,* or to distinguish that case from the instant one, but his efforts have been futile.

I believe that the foregoing opinion is sustained by *Timmerman* v. *Hartford Accident & Indemnity Co., supra; United States* v. *Smith,* 8 Wall. (75 U. S.) 587; *Spiegler* v. *City of Chicago,* 216 Ill. 114 (74 N. E. 718); *Rumford* v. *Boston Grocery Co.,* 111 Me. 116 (88 Atl. 394); *Lyman* v. *Cheever,* 168 N. Y. 43 (60 N. E. 1047); *Commonwealth* v. *Foch Cereal Co.,* 302 Pa. 373 (153 Atl. 695); *Adams* v.

*State,* 105 Tex. 374 (150 S. W. 591) ; and that the holding in the *Blue Ribbon Case, supra,* is decidedly in the minority.

The judgment should be reversed as to the defendant surety company, with costs.

North, J.  I am unable to agree with Mr. Justice Chandler's conclusion that in the instant case the transaction which resulted in the alleged liability on the bond did not occur during the life of the bond and that therefore the surety cannot be held liable. Instead, I think it must be held, under the particular facts in this case, that the transaction which gave rise to the fraudulent conduct for which plaintiff seeks to hold the surety liable was fully consummated and the status and rights of the respective parties fixed prior to the expiration date of the dealer's license or the expiration of its bond.

Admittedly, during that portion of 1937, up to and including June 30th, the principal on the bond was a duly-licensed broker.  The broker's license expired June 30, 1937, and was not renewed; but prior to June 30, 1937, the broker had fully completed transactions with various purchasers of stock in plaintiff company whereby they had agreed to buy and the company had agreed to sell at an agreed price an agreed number of shares of stock in plaintiff company.  In so far as there were any negotiations for the sale of this stock they were fully completed and the rights of the vendor and the vendees were finally fixed prior to June 30, 1937, the date on which the broker's license expired.  A few days later and incident to legal requirements and in compliance with these consummated transactions the purchasers of the stock remitted to the broker through its agent the respective sums due from them to the vendor company.  The broker, who unknown to the parties

concerned was then insolvent, embezzled these remittances. The purchased stock was never delivered. There is no express provision in the bond as to the date of its expiration nor is there such a provision in the statute or in the license issued to the broker.

Under the above facts it seems clear that the purchasers of the stock had a right of action under the provisions of the blue sky law,* as hereinafter noted, in consequence of a clear breach of the broker's bond given in compliance with the provisions of that law. The rights of action of the respective purchasers were assigned to the plaintiff in this suit, and so plaintiff stands in the shoes of the purchasers so far as its legal rights are concerned.

In compliance with the blue sky law, Act No. 220, § 22, Pub. Acts 1923 (2 Comp. Laws 1929, § 9790), as amended by Act No. 37, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9790, Stat. Ann. § 19.762), the bond here in suit was conditioned "upon the faithful compliance with the provisions of this act by said dealer and all salesmen registered by him."

2 Comp. Laws 1929, § 9799, as amended by Act No. 37, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9799, Stat. Ann. § 19.771), in part reads:

"It shall be unlawful for any person engaged in business as a dealer and/or broker within the meaning of this act and who is insolvent, to accept or receive from a customer, ignorant of such broker's insolvency, any money or securities belonging to such customer *otherwise than in liquidation of or as security for an existing indebtedness and to thereby cause the customer to lose in whole or in part any money or securities.*"

That is exactly what was done in the instant case; and its legal aspect is not altered by the fact that

*2 Comp. Laws 1929, § 9769 *et seq.* (Stat. Ann. § 19.741 *et seq.*).— Reporter.

plaintiff subsequently voluntarily reimbursed the purchasers for the moneys paid to the broker. The purchasers were indebted for and made remittances to the broker for their respective purchases which previously, and prior to any claimed expiration of the bond in suit, had been fully consummated. Except for such antecedent consummated transactions the acts which gave rise to this suit would not have transpired. Under such a state of facts the surety on the bond should be held liable to indemnify plaintiff as the assignee of the stock purchasers for the amount of the loss; and it should be so held on the theory that the loss arose out of a transaction which was fully consummated in its legal aspects prior to the expiration of the broker's license or his bond. The foregoing holding is not in conflict with the decisions cited in my Brother's opinion; but instead the cited decisions are clearly distinguishable.

The *Timmerman Case* (243 Mich. 338) is wholly unlike the instant case in that a license never was issued to any person as a broker or dealer and therefore the bond issued in contemplation of an application for and the issuance of a dealer's license never became operative. No application for a license was made and none issued. Under such conditions it is too plain for argument that the surety on the bond could not be held liable.

In *United States* v. *Smith*, 8 Wall. (75 U. S.) 587, the bond was given to secure payment to the Federal government of duties by one licensed to engage in distilling "coal oil." Licenses granted to those so engaged expired on May 1st of each calendar year. After the expiration of his license the principal on the bond failed to pay duties which accrued to the government in the months of June and July, 1866. The right of payment which the government sought to enforce against the surety on the bond was in no way connected with any transaction of the licensee

which had its inception or was consummated prior to the expiration date of the license. It was under such circumstances that the court held the surety was not liable. But in the instant case plaintiff is asserting liability against the surety by reason of the dealer's defalcation in a transaction which so far as the contractual rights and the legal status of the respective parties are concerned was fully consummated prior to the date on which the dealer's license expired.

Likewise, in *Spiegler* v. *City of Chicago*, 216 Ill. 114 (74 N. E. 718), the factual situation is clearly distinguishable from the instant suit in that the Illinois case did not involve a transaction which was consummated prior to the expiration date of the license. On this same ground the remaining four cases cited by my Brother are distinguishable from the instant case.

The judgment entered in the circuit court in favor of plaintiff in the instant case should be affirmed, with costs.

Nor am I in accord with Mr. Justice CHANDLER's opinion wherein he intimates it is impossible to distinguish from the instant case our decision in *City of Detroit* v. *Blue Ribbon Auto Drivers' Ass'n*, 254 Mich. 263 (74 A. L. R. 1306). Both in the instant case and in, the *Blue Ribbon Case* the bond in suit was one required by law; and if justifiable within its express terms the bond in each case should be so construed that it will accomplish the purpose for which it was required. Such construction is an obvious essential of sound public policy in the administration of law.

In the instant case resort to the bond arose from a transaction which was purely contractual, not tortious. Both before and at the time plaintiff's assignors purchased the stock and made the pay-

ment therefor they had full opportunity to ascertain whether the broker was operating under bond, and to ascertain the terms of the bond, including the date of its expiration. Under such circumstances it was only a matter of justice to the surety and no injustice to plaintiff or its assignors that the bond should be construed according to its terms, including the period of its duration. As stated in appellant's brief: "The act (blue sky law) affords no protection to persons dealing with unlicensed dealers, brokers and salesmen." And it may be noted this was the basis of our decision in *Timmerman* v. *Hartford Accident & Indemnity Co., supra.*

But liability on the bond in the case of *City of Detroit* v. *Blue Ribbon Auto Drivers' Ass'n, supra,* arose solely from a tortious act, not from a contractual relation. The plain purpose of the Detroit ordinance which required the bond was to insure to an injured person satisfaction for negligent injury done by a bonded driver of a Detroit taxicab. Neither Amanda Watson, the injured party in the Detroit case, nor any other pedestrian on the streets of Detroit could by any reasonable means know which of the numerous drivers of Detroit taxicabs were under bond or what were the terms and conditions of the bond that might have been given by any particular driver. And certainly no one could foretell by which of the many taxicab drivers he would be negligently injured. Surely the paid surety on such a bond was chargeable with notice of the purpose for which the bond was required. Hence as a matter of public policy the surety in the Detroit case was held liable. A contrary holding would have done an injustice to the injured pedestrian and would have deprived the public of the protection obviously contemplated by the ordinance provision. Further, it should be noted that the express condi-

tion of the taxicab bond was that if "any judgment rendered in any court against the owner of such taxicab (or taxicabs) arising out of damage or injury to any person or property caused by the negligent operation of such taxicab (or taxicabs) is paid, then this obligation shall be null and void, otherwise in full force and effect."

The performance by the surety of the above-quoted condition of its bond was exactly what our decision required in the *Detroit Case,* and it should stand as sound law in this jurisdiction.

As above noted, the judgment entered in the circuit court should be affirmed, with costs.

BUSHNELL, C. J., and SHARPE, McALLISTER, WIEST, and BUTZEL, JJ., concurred with NORTH, J. The late Justice POTTER took no part in this decision.