## NATIONAL SURETY CORPORATION v. CITIZENS BANK OF ASHVILLE. CITIZENS BANK OF ASHVILLE v. NATIONAL SURETY CORPORATION et al.

### Nos. 9246, 9247.

Circuit Court of Appeals, Sixth Circuit.

April 13, 1943.

Leslie R. Ulrich and Francis J. Amer, both of Cleveland, Ohio (Garfield, Daoust, Baldwin & Vrooman, and Clare M. Vrooman, all of Cleveland, Ohio, and Hugh M. Bennett, of Columbus, Ohio, on the brief), for National Surety Corporation, appellant.

James I. Boulger, of Columbus, Ohio, for appellee Citizens Bank of Ashville.

Before HICKS, SIMONS and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

The parties will be referred to as they appeared of record in the court below.

The plaintiff, Citizens Bank of Ashville, an Ohio corporation, transacted a banking business in Ashville, Ohio. The defendant, Cameron & Company, herein called Cameron, an Illinois corporation, was a licensed dealer in securities in Ohio. As a prerequisite to obtaining a license for 1934, Cameron on December 8, 1933, pursuant to Sec. 8624-20 of the Ohio General Code, executed and filed with the proper state authorities a Dealer's bond in the penalty of $10,000.00, payable to the State for the use and benefit of the people thereof, with defendant National Surety Corporation, herein called National, as surety. The condition of this bond was that, "if * * * the said Cameron & Company shall pay, satisfy, and discharge any judgment or decree that may be rendered against the said Cameron & Company in a court of competent jurisdiction in a suit or action brought by a purchaser of securities in which it shall be found or adjudged that such purchaser was defrauded in the sale

of such securities, by the said Dealer, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The bond followed the statute.

For the purpose of improving its investment portfolio, plaintiff had an arrangement with defendant Cameron, whereby it would from time to time submit to Cameron a list of its securities from which Cameron would select certain ones and recommend that these should be exchanged for others to be designated by Cameron. The plaintiff would ship its securities to its agent, the National City Bank of New York, herein called the New York bank, with directions to deliver them to Cameron upon delivery by the latter to the New York bank of the securities to be exchanged.

On November 29, 1933, a representative of Cameron in its New York office, over long distance telephone, requested plaintiff to alter its instructions to the New York bank and permit Cameron to procure bonds against a trust receipt. Plaintiff asked whether that course would affect its security and the reply was that it would not. This representative assured plaintiff that under this new arrangement its protection was the same as or equal to that of the former arrangement by which deliveries were made to Cameron of bond against bond. Plaintiff complied with Cameron's request and changed its instructions to the New York bank accordingly. Later on plaintiff was reassured that the "trust receipt" plan was just as safe as the former plan of delivering bond against bond and it relied upon these representations. Plaintiff's cashier did not know the difference between a trust receipt transaction and those previously had with Cameron. Upon Cameron's representation the cashier believed that the trust receipt protected plaintiff's securities; and that the receipt provided for the delivery of bonds to the New York bank by Cameron in exchange for plaintiff's bonds, or for a deposit of cash or other security by Cameron with the New York bank. The receipts embodied no such requirement and plaintiff was never furnished with a copy of any of them.

On June 20, 1934, plaintiff itself sent certain bonds to the New York bank and instructed its correspondent, the Ohio National Bank of Columbus, to send others. These instructions were carried out. All bonds were to be delivered to Cameron against the trust receipt. They were so de-livered with the understanding with Cameron that the plaintiff was to receive in exchange certain other bonds which it instructed the New York bank to ship to the Ohio National Bank for safekeeping. Shortly thereafter, Cameron by mail advised the plaintiff that it had sold or delivered the bonds sent to the New York bank by plaintiff and had bought the bonds which plaintiff was to receive from Cameron. From time to time thereafter the same procedure was repeated and on each occasion Cameron mailed confirmation of bonds sold to the plaintiff, the confirmation reciting, "we confirm bonds sold to you, * * *" and containing a description of the bonds which plaintiff was to receive.

Cameron did not deliver to the Ohio National Bank the bonds which it agreed to deliver for plaintiff and which it represented that it had delivered. On the other hand, in September following, Cameron's president admitted that he had embezzled plaintiff's bonds and securities and had appropriated them to his own use.

Plaintiff commenced this action against Cameron and National, its surety, to recover damages on account of Cameron's fraudulent conversions and of its misrepresentations. Shortly thereafter Cameron was adjudged a bankrupt and its trustee proceeded no further with its defense than to file an answer. The New York bank was made a third party defendant by National but the suit against it was dismissed. The case was tried to the court without the intervention of a jury.

The court found the facts, about which there was no substantial controversy, as indicated above.

It further found as a matter of law that the appropriation by Cameron of plaintiff's securities was a fraud within the terms of the Ohio Securities Act. We concur.

Appellant urges that the representation made by Cameron's agent that the exchange by the New York bank of plaintiff's securities for a trust receipt would not affect its security was not a statement of fact but the expression of an opinion only. We need not belabor the point,—the case goes deeper than that. The fraud consisted of the whole scheme whereby under the pretense of a "sale" of securities to the plaintiff, as the term sale is defined under Sec. 8624-2(3) of the Ohio General Code, Cameron obtained possession of plaintiff's securities and appropriated them to its own

use. For the resulting damages plaintiff obtained a judgment against Cameron which was unsatisfied and it follows that defendant is liable therefor upon its statutory bond to the extent of the penalty thereof.

It is urged that Cameron was not required to give bond to cover transactions with a bank and that therefore plaintiff is not protected by the bond. It is concededly true that in Ohio a stockbroker who sells securities to banks only is not required to take a license and give a bond. Ohio General Code, Sec. 8624-4(3). But Cameron did not limit its activities to transactions with banks. It took out a license as a general dealer and gave the requisite bond. Such bond expressly protects "any purchaser" who has recovered a judgment for damages in which it shall be found or adjudged that such purchaser was defrauded in the sale of securities, and such is the holding in Indemnity Ins. Co. of North America v. Kircher, Court of App. of Ohio, 47 Ohio App. 140, 191 N.E. 374. The Kircher decision is by the highest court of Ohio, which has passed on the question and we are bound by it.

Further, the point is made that Cameron's appropriation of plaintiff's securities to its own use took place in New York; that the Ohio Securities Act of 1929, has no extra-territorial effect and therefore does not apply. The contention is without merit. Plaintiff's cause of action is predicated upon fraud. Whether the fraudulent conduct of Cameron took place in one state or another is not material. In this particular also the Kircher case decides adversely to the defendant and is controlling.

Plaintiff brings a cross-appeal. The court found that the market value of the securities wrongfully appropriated was $13,405.64 and rendered judgment against Cameron for that sum, but limited the recovery against the defendant to $10,000.00, the penalty of the bond. It allowed interest on that amount from the date of the judgment. Plaintiff contends that interest should have been allowed from the date upon which the action was brought. We think the court was right. Defendant's obligation was to satisfy plaintiff's judgment. The obligation was breached when the judgment remained unsatisfied and interest is allowable from the date of the breach.

Judgment affirmed.