were all the evidence introduced on the hearing of the motion."

The Berman decision was affirmed by the Supreme Court, without opinion, in 81 Ohio St., 508, 91 N. E., 1123.

Therefore, this court not being in a position to consider the affidavits used on the motion for a new trial, there is nothing before us on which the court can consider the question raised as to what took place at the trial. The judgment is therefore affirmed.

*Judgment affirmed.*

Ross, J., concurs.

INDEMNITY INS. CO. OF NORTH AMERICA *v.* KIRCHER.

(Decided March 3, 1934.)

*Mr. Phil S. Bradford* and *Mr. John W. Bolin,* for plaintiff in error.

*Mr. A. B. Wells,* for defendant in error.

MAUCK, J.   Charles P. Kircher filed his petition in the Court of Common Pleas against Knapp & Co. and the Indemnity Insurance Company of North America, in which he sought to recover on a bond upon which Knapp & Co. was principal and the Indemnity Insurance Company was surety. The bond had been entered into pursuant to the provisions of Section 8624-20, General Code. Issue was joined upon the petition, and trial had to a jury, which resulted in a verdict and judgment in favor of the plaintiff, and the Indemnity Insurance Company now seeks to reverse that judgment. No evidence was offered in the case except that of the plaintiff. The court instructed a verdict in the plaintiff's favor. The question raised by a motion for nonsuit and by exceptions to the instructions to the jury is whether or not under the admitted facts the plaintiff is entitled to recover upon the bond in question.

Knapp & Co. was a West Virginia corporation located at Parkersburg, West Virginia, doing a brokerage business. It maintained an agency in Athens county, in charge of C. E. Fisher. The plaintiff, Charles P. Kircher, was the holder of eight hundred shares of North American Trust shares of the issue of 1953, which he desired to change for like shares of the issue of 1956. He approached Mr. Fisher, who agreed to effect the change without compensation. These shares passed by delivery without endorsement and were handed to Fisher by the plaintiff. Fisher sent them to Knapp & Co. at Parkersburg. Knapp & Co. forwarded to the plaintiff a communication reading: "Confirmation. We confirm sale to you of the following to day: Dated March 28, 1932, 800 North American Trust Shares, 1956, at the price of two twenty-five per share for settlement of 29-32. Amount $1800.00."

It further appears that if Knapp & Co. bought the

shares for plaintiff, as thus represented, it appropriated them to its own use; and that if it did not buy them it sold plaintiff's original shares and appropriated the proceeds thereof. Whether this state of facts brings the case within the terms of the bond is the question before us.

Section 8624-20, General Code, provides as follows:

"Such bonds shall be conditioned that the dealer or salesman, as the case may be, shall pay, satisfy and discharge any judgment or decree that may be rendered against him in a court of competent jurisdiction in a suit or action brought by a purchaser of securities in which it shall be found or adjudged that such purchaser was defrauded in the sale of such securities.

"Any purchaser claiming to have been damaged by fraudulent misrepresentation in the sale of any security by such dealer or salesman may maintain an action at law against the dealer or salesman making such fraudulent misrepresentations; or against both the dealer and salesman where the salesman makes such fraudulent misrepresentations; and may join as parties defendant the sureties on the bonds hereinabove provided for."

The defendant argues that no fraudulent misrepresentation was made to the plaintiff, and that for that reason this case does not come within the terms of the statute quoted.

If the liability is measured only by the last sentence above quoted, this argument would be sound; but while the second sentence in terms provides for a recovery for damages occasioned by fraudulent misrepresentation in the sale of a security, the first sentence provides that a condition of the bond shall be that the surety will satisfy any judgment in an action "in which it shall be found or adjudged that such purchaser was defrauded in the sale of such securities." The statute as it now reads comes into the Code through a revision

of the Securities Act made in 1929. 113 Ohio Laws, 216 *et seq.* Prior to that time the terms of a dealer's bond were fixed by Section 6373-3, General Code. The old section provided for liability in case the purchaser suffered a loss through misrepresentations; and such bonds were further conditioned upon the observance of all the provisions of the Securities Act. The provision of the statute law that the bond shall be so conditioned as to inure to the benefit of a purchaser "defrauded in the sale of such securities" is a new term, and it must be concluded that it was deliberately incorporated into the law by the revision of 1929 for the purpose of extending the liability of broker's sureties to any case where a purchaser was defrauded. We accordingly do not adopt the view that liability is limited to a case where false representations have been made, but hold that liability also arises in case a purchaser is in any other way defrauded by the broker in the sale of securities. That the plaintiff in this case was defrauded, under any definition of fraud, can hardly be disputed. All of his property was appropriated by the brokerage company to its own use.

It is urged, however, that the fraud committed on the plaintiff was consummated in another state, and that the Ohio Securities Act cannot cover crimes committed outside of Ohio, nor apply to sales which involve interstate commerce where such sales are consummated outside Ohio. To this end *Hall* v. *Geiger-Jones Company*, 242 U. S., 539, 37 S. Ct., 217, 61 L. Ed., 480, L. R. A., 1917F, 514, Ann. Cas., 1917C, 643, is cited. The case cited is not helpful on the point for which it is urged. In that case a domestic corporation sought to enjoin the enforcement of the law on the ground, among others, that its enforcement would be an interference with interstate commerce. This contention was not sustained, but the court pointed out that the Ohio law only sought to regulate business done within the

state. The case at bar does not offend against this rule. This is not a criminal case. The fact that the actual embezzlement of plaintiff's property occurred without the state is not important. The gist of the case is not where the plaintiff was defrauded, but whether he was defrauded at all, by one who had given surety not to defraud him. He would not have been defrauded had not the defendant dealer maintained its agency in Ohio, and through that agency in Ohio had undertaken to contract with regard to the subject-matter of this action. The defendant dealer was a West Virginia corporation. It could only establish an Ohio agency by leave of the state, and had to come into the state on such terms as the state prescribed. Because the state required it, the dealer gave its bond to protect an Ohio customer who might be defrauded in the sale of securities. To read into the statute a provision that its terms should not apply to a transaction of which some part had been performed outside the state would destroy the statute. Necessarily, where, as in the instant case, the dealer is a nonresident, the order taken in Ohio is forwarded to West Virginia. When the order is filled the securities are shipped to Ohio and delivered to the purchaser. If the defendant's interpretation in this respect were sound, no liability would ever attach to the bond of a non-resident dealer although in terms foreign dealers and their transactions are specifically covered by the statute. The defendant dealer, being a foreign corporation, was enabled to establish an Ohio agency only by giving the bond, and it cannot question the regulations of the state whose hospitality it conditionally enjoys. 12 Ruling Case Law, 62. The bond protects any purchaser of securities, who in this state deals with it through its local agent, against any fraud of the dealer in a sale of securities, whether the fraud be consummated within or without the state, and regardless of whether or not it is contemplated that

the securities sold shall thereafter be shipped across the state's frontier.

A more difficult question arises, however, and that is whether or not the plaintiff is one of those protected by the bond. The law provides that such protection shall be extended only to "purchasers."

A "purchaser" in the ordinary acceptance of that term is one who acquires property by the expenditure of money or its equivalent. In this particular instance the term manifestly relates to any one to whom a sale of securities is made. The term "sale" is constantly recurring in the act under consideration, and the act itself gives to the word a broad significance. The third paragraph of Section 8624-2, General Code, thus defines the word: " 'Sale' shall have the full meaning of the term 'sale' as applied by or accepted in courts of law or equity, and shall include every disposition, assignment, subscription, offer to sell, option to sell, solicitation or agreement to sell or exchange any security or an interest therein, directly or indirectly by agent, circular, pamphlet, advertisement or otherwise."

The sale of a security, therefore, means, among other things an exchange of securities, and as one who acquires by sale is a purchaser, so is a purchaser one who acquires by an exchange of securities.

There is another aspect of this particular case that justifies the view that in fact the plaintiff in this case was a purchaser, whether his negotiations with Fisher so indicated or not. We refer to the confirmation mailed him by Knapp & Co., quoted above. By this instrument the broker informed him that there had been sold to him eight hundred North American Trust shares of the 1956 issue. It was doubtless true that when Fisher received from the plaintiff his trust certificates there was no way by which the broker could secure for him the different issue which he desired

except by selling on the market those which he already
held and buying on the market those which he desired.
It is clear that the plaintiff did not know this and likely
that Fisher did not. Knapp & Co. evidently knew it,
however, for it sold the plaintiff's shares and sent to
the plaintiff the confirmation advising him that it had
purchased for him the new shares which he desired. If
the confirmation was true, what the dealer embezzled
was not the old certificates, but the new ones, men-
tioned in the confirmation. The dealer, in fact, having
told the plaintiff he was a purchaser, will not now be
allowed to refute its own representation. We conclude,
therefore, that both as a matter of law, generally, and
as a matter of fact, in this particular case, the plaintiff
was a purchaser of securities in this transaction and
that the remedy on the bond is available to him.

*Judgment affirmed.*

BLOSSER, P. J., and MIDDLETON, J., concur.