In re BELL & BECKWITH, Debtor.

Patrick A. McGRAW, Trustee, Plaintiff,

v.

LIBERTY AIRLINES, INC., et al, Defendants.

Bankruptcy No. 85–0022.
Related Case No. 83–0132.

United States Bankruptcy Court,
N.D. Ohio, W.D.

June 28, 1988.

Fuller & Henry, Toledo, Ohio, for plaintiff.

R. Michael Frank, Toledo, Ohio, for defendants.

Richard G. LaValley, Sylvania, Ohio, H. Buswell Roberts, Jr., J. Michael Vassar, Toledo, Ohio, for defendant Frahn.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Cross Motions for Summary Judgment. In a previous ruling, this Court denied the Defendants' Motion to Dismiss Or In The Alternative, For A Stay of Proceeding, holding that the matter presented was a noncore related proceeding and that abstention was not appropriate. After discovery, the Trustee and the Defendants both filed Motions for Summary Judgment, with supporting Memoranda. Both parties later filed Memoranda in Opposition to the other parties' Motion for Summary Judgment. Subsequently, both sides filed Reply Briefs on the issues presented. A Request for Admissions and Interrogatories to the Defendants was then filed by the Trustee, along with a Brief. The Defendants filed a Brief in Opposition. After reviewing the written arguments, this Court Ordered the Defendants to answer the Plaintiff's Request for Admissions and Interrogatories. The Court has reviewed the written arguments of counsel, the affidavits, depositions, and records submitted, as well as the entire record in this case. Based on that review, and for the following reasons, the Plaintiff's Motion for Summary Judgment should be denied, and the Defendants' Motion for Summary Judgment should be granted in part and denied in part.

### FACTS

The Plaintiff in this action is the Trustee for the liquidation of the Debtor in the underlying bankruptcy proceeding. Bell & Beckwith, the Debtor, was a stock brokerage located in Toledo, Ohio. The brokerage operated as a partnership and was managed by Edward P. Wolfram, Jr., (hereinafter "Mr. Wolfram"). Starting in ap-

proximately 1973, Mr. Wolfram began systematically diverting cash and securities held by the brokerage in customer margin accounts. At the time the fraud was discovered by a Securities & Exchange Commission examiner in February of 1983, Mr. Wolfram had stolen approximately Forty-six Million Dollars.

On February 16, 1983, subsequent to the commencement of this liquidation proceeding, the Trustee received from both Mr. Wolfram and his wife, Zula Wolfram, an assignment of all their assets, interests, rights, and property. Certain property was listed in the assignment agreement. The Liberty Airlines, Inc. stock which is the subject of this litigation was not listed. The Trustee asserts that the stock in Liberty Airlines, Inc. (hereinafter "Liberty Airlines") was assigned through the general assignment of all real and personal property owned by the Wolframs or any of the Wolfram entities.

The case presently before the Court arises from a public stock offering by Liberty Airlines. In a nutshell, the Trustee seeks rescission of the sale of Twenty-five Thousand (25,000) shares of Liberty Airlines stock bought by NEST, Inc., an entity owned by Zula Wolfram. The Trustee contends that the stock offering was made in violation of the Ohio Securities Act, which is also known as Ohio's "Blue Sky Law". The Ohio Securities Act regulates public stock offerings made within the State. In 1982 and 1983, Defendant Liberty Airlines, Inc. was involved in making an initial public offering of Four Hundred Thousand (400,000) shares of its common stock. The Trustee's Complaint asserts that John R. Ayling did certain wrongful acts during the public stock offering which should give the Trustee the right to demand the return of the One Hundred Twenty-five Thousand Dollar ($125,000.00) purchase price of the Liberty Airlines shares. The Trustee argues that he acquired this right to rescind the stock purchase through the "blanket" assignment of property made by Zula Wolfram. The Defendants in this action are the officers and directors of Liberty Airlines. The Defendants have moved for Summary Judgment against the Trustee

based on several defenses which are detailed in the body of the Opinion.

The Trustee's Complaint arises out of the following set of facts. In anticipation of its public stock offerings, Liberty Airlines sought "registration by qualification" in Ohio under O.R.C. § 1707.09. The Ohio Division of Securities granted this application by way of a Division Order dated September 17, 1982. The Division Order required certain conditions precedent to be fulfilled. The pertinent part of the Order states:

> IT IS ORDERED FURTHER, that the securities herein qualified be sold in accordance with the terms and conditions more fully set forth in the application, exhibits, and other documentation filed herein.

At the time of Liberty's stock offering, John R. Ayling was a director of Liberty Airlines and a registered stock broker employed by Bell & Beckwith. Bell & Beckwith was the underwriter for the Liberty Airlines stock offering. Mr. Ayling owned One Hundred Seventy Thousand (170,000) shares of Liberty Airlines stock. All of Mr. Ayling's shares had been purchased prior to the public offering, for a price substantially lower than the public offering price of Five Dollars ($5.00) a share.

The Trustee asserts that liability under the Ohio Securities Act arises from two different sources in this case. First, the Trustee contends that Mr. Ayling did not properly escrow his stock certificates. Instead of escrowing valid certificates, the Trustee maintains that Mr. Ayling escrowed stock certificates which had been cancelled. The Trustee also asserts that Mr. Ayling did not redeem his "cheap stock", as required.

The November 12, 1982 Prospectus for the Liberty Airlines stock offering states at page 19:

**STOCK ESCROW BY CERTAIN OFFICERS, DIRECTORS AND PRINCIPAL SHAREHOLDERS**

The Division of Securities, Department of Commerce, State of Ohio (the "Divi-

sion"), has required that as a condition of approving this offering in the State of Ohio, certain shares of the Company's Common Stock held by certain officers, directors, or principal shareholders of the Company, totalling 375,000 shares, be placed in escrow with a bank as escrow agent (the "Escrow Agent") pursuant to a specified form of escrow agreement (the "Escrow Agreement.")

The following individuals (the "Escrowing Shareholders") were required by the Division to place their shares in escrow: Merle E. Pheasant, Jr., John R. Ayling, Thomas J. Wiles, and Robert F. Wigmore.

In conjunction with the public offering, the National Association of Security Dealers required that Ninety-five Thousand (95,000) shares of Mr. Ayling's stock be redeemed by Liberty Airlines. Apparently, the Ohio Division of Securities Order required that the entire balance of Mr. Ayling's stock be placed into escrow. An escrow agreement was made between Liberty Airlines and the Mid–American National Bank and Trust Company for the escrow of the shares of Defendants Robert F. Wigmore, Sr., John R. Ayling, Merle E. Pheasant, Jr., and Thomas J. Wyles.

The record indicates that Mr. Ayling deposited certain certificates representing shares in Liberty Airlines with the escrow agent. Mr. Ayling deposited certificate number 11 (representing 10 shares of Liberty Airlines stock), certificate number 13 (representing 5 shares), and certificate number 95 (representing 74,985 shares). However, the escrowed stock certificates are marked as cancelled on the stock records of Liberty Airlines. No cancellation stamp, or other notice, appeared on the certificates which had been escrowed. The Trustee argues that the shares of stock were not outside of Mr. Ayling's possession and control. The Trustee points to the October 4, 1983 Deposition of John Ayling, which indicates that Mr. Ayling knew he had shares of Liberty Airlines in his account at Bell & Beckwith, and that he retained access to them. There is no allegation or evidence that Mr. Ayling sold any of this Liberty Airlines stock.

In early January of 1983, during the time when the Trustee contends that cancelled certificates were in escrow, NEST, Inc. purchased Twenty-five Thousand (25,000) shares of Liberty Airlines stock. NEST, Inc. was the name of an account at Bell & Beckwith which was held in Mrs. Wolfram's name. Mr. Wolfram had, for many years, handled his wife's investments, often without her knowledge of the particulars of her interest. Mr. Wolfram apparently sold the shares of Liberty Airlines stock to NEST, Inc. As previously noted, Mrs. Wolfram assigned all her rights, title and interest in all her property to the Trustee of the estate of Bell & Beckwith.

On January 28, 1983, investors were advised of their right to rescind their purchase of Liberty Airlines shares. The offer of rescission was not made because of knowledge of a violation of the Ohio Securities Act. Moreover, the offer to rescind was made prior to closing of the offer. It was an offer to rescind a commitment to purchase. There has been no offer by Liberty Airlines to the Plaintiff–Trustee to rescind the sale of Liberty Airlines shares pursuant to the provisions of the Ohio Securities Act.

The shares of Liberty Airlines were never issued after the closing of the offer on February 1, 1983. Accordingly, the Trustee has been unable to tender the shares back to the Defendants as required by O.R.C. § 1707.43.

On or about April 30, 1983, Attorney Frank J.P. McManus filed a claim form for Mrs. Wolfram with the Trustee. The claim form reflects that Mrs. Wolfram was the owner of the NEST, Inc. account, and that the account was assigned to the Trustee.

Defendant, Robert F. Wigmore, Sr., failed to file an Answer, and the Trustee's Motion for Default Judgment was granted by this Court on March 11, 1986.

## LAW

Summary Judgment is properly granted when the Movant can demonstrate that there are no genuine issues of material fact, and that they are entitled to judgment

as a matter of law. *See,* Bankruptcy Rule 7056 and Fed.R.Civ.P. 56. However, Movant must be able to demonstrate all the elements of a cause of action in order to prevail. *In re Hartwig Poultry, Inc.,* 57 B.R. 549, 551 (Bankr.N.D.Ohio 1986). Motions for Summary Judgment must be construed in the light most favorable to the party opposing the motion. *In re Weitzel,* 72 B.R. 253 (Bankr.N.D.Ohio 1987).

■ This adversary case is brought under the Ohio Securities Act, O.R.C. Chapter 1707. Many of the arguments which have been raised appear to be issues of first impression under this statute. In deciding issues based upon state law, federal courts must, under the doctrine set forth in *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), first look to either the pronouncements of the state's legislature, or the decisions of the state's highest court. Where neither the legislature nor the highest court of the state has spoken, a federal court must anticipate the rule that would be applied by the states highest court if they were confronted with the same facts and issues. *Roger v. Lehman Brothers Kuhn Loeb, Inc.,* 621 F.Supp. 114, 118 (S.D.Ohio 1985); *In re Stone,* 52 B.R. 305 (Bankr.W.D.Ky.1985). The decisions of lower state courts on questions of state law, while attributed some weight, are not controlling where the highest court of the state has not ruled on the questions presented. *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

In discussing the protection contemplated by the Ohio Security Act, the Ohio Supreme Court has stated:

> [T]he purpose behind the violated provision is to prevent those persons willing to market worthless or unnecessarily risky securities from soliciting the purchasing public without first subjecting themselves and their securities to reasonable licensing and registration requirements designed to protect the public from its own stupidity, gullibility and avariciousness.

*Bronaugh v. R. & E. Dredging Co.,* 16 Ohio St.2d 35, 40–41, 242 N.E.2d 572, 576 (1968).

The Court will first consider the defenses raised by the Defendants in this action. *The Sufficiency of the Evidence of Zula Wolfram's Stock Ownership.*

■ The Defendants contend that there is insufficient evidence showing that Zula Wolfram owned any stock in Liberty Airlines. They point to Zula Wolfram's affidavit filed in this case, in which she avers that she had no knowledge of any interest in NEST, Inc. Defendants also cite to certain Depositions of Zula Wolfram, in which she states that until her current attorney began his representation, she was unrepresented. *August 20, 1984 Deposition of Zula Wolfram,* at 18; *October 30, 1985 Deposition of Zula Wolfram,* at 42–44, 91–94. Therefore, Defendants argue, because Zula Wolfram did not personally sign the Customer Claim, it should be disregarded by the Court. Defendants also make arguments based on the fact that the Wolfram's assignment of assets to the Trustee does not list any stock in Liberty Airlines.

The Trustee maintains that there are several grounds for finding that Zula Wolfram owned the Liberty Airlines stock through the NEST, Inc. account at Bell & Beckwith. First, Attorney Frank McMannus filed a Customer Claim with the Trustee on behalf of Zula Wolfram for the NEST, Inc. account. The claim form states that the account was assigned to Patrick A. McGraw, Trustee. Initially, the Trustee argues that Zula Wolfram should be estopped from asserting a position contrary to the Customer Claim filed by her attorney.

Frank McManus was the family attorney for the Wolframs. *See, e.g., August 20, 1984 Deposition of Zula Wolfram,* at 18. He filed the Customer Claim form on April 30, 1983. The Depositions of Zula Wolfram reflect that the closing of Bell & Beckwith did not end Mr. McManus' representation of both of the Wolframs. *See, October 29, 1985 Deposition of Zula Wolfram,* 17–20, 44–47, 61, 64–66, 84; *August 20, 1984 Deposition of Zula Wolfram,* at 16–19, 24. Moreover, one month after filing the Cus-

tomer Claim, the Depositions appear to indicate that Mr. McManus was representing Zula Wolfram. *See, June 1, 1983 Deposition of Zula Wolfram,* 104–105, 122; *see also,* pages 17, 24, 49, 54–55, 90, 94, 99–101, 112, 116, 119; *August 4, 1983 Continuance of June 1, 1983 Deposition of Zula Wolfram,* at 141–142. Zula Wolfram's testimony reflects that she may have reconsidered her attorney's dual representation after the Trustee filed Adversary Case No. 84–0076 on March 13, 1984. However, that does not affect the possibility that Frank McManus may have been representing her before she perceived a conflict. Mrs. Wolfram did not state that any pleading filed by Mr. McManus should be disregarded because it had been filed by a person who was not her attorney. Accordingly, it may be argued that, at the very least, she adopted the pleadings filed on her behalf by Mr. McManus.

The Trustee also argues that Zula Wolfram's affidavit should not be controlling because she has consistently testified under oath in her Depositions that she had no real knowledge of her husband's management of her assets, and the investments he made with her money. *See, Transcript, Trustee v. Ayling, et al.,* Case No. 84–0023 at 4–6; *August 20, 1984 Deposition of Zula Wolfram,* at 6–9, 40–41; *July 20, 1984 Deposition of Zula Wolfram,* at 7; and citations in *Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment.* This testimony reveals that Zula Wolfram has previously stated that she allowed her husband to manage her assets.

Finally, the Court will address the Defendants' assertion that the blanket assignment does not mention NEST, Inc. or Liberty Airlines, and that fact should be considered evidence that Zula Wolfram had no interest in the Liberty Airlines stock which is the subject of this lawsuit. Notably, Zula Wolfram knew that money from her account had been loaned to Liberty Airlines in her name. *See, June 1, 1983 Deposition of Zula Wolfram,* at 76–77, 79–82. However, this loan was never listed as an asset in the blanket assignment given to the Trustee. This would appear to contradict Defendants' assertions that the Wolframs listed all assets on the blanket assignment. Moreover, the assignment is broad enough to convey all of Zula Wolfram's assets to the Trustee, regardless of whether or not she was able to list them at the time the assignment was made.

There is also further evidence before the Court which would support the Trustee's assertion of Zula Wolfram's ownership of Liberty Airlines stock. John Ayling's testimony supports the fact that Zula Wolfram was a Liberty Airlines shareholder. *See, October 4, 1983 Deposition of John Ayling,* at 77, 82–85, 95–96, 114–115. His statements also support Mrs. Wolfram's contention that her husband handled her investments without her knowledge of the specifics. *See, October 4, 1983 Deposition of John Ayling,* at 79–80. Further corroboration comes from *Supplement No. 1 to November 12, 1982 Prospectus,* dated January 28, 1983, which goes into some detail about Zula Wolfram's interest in Liberty Airlines.

Accordingly, after reviewing the evidence before the Court, Zula Wolfram's affidavit does not warrant the granting of Summary Judgment for the Defendants.

*Standing: Is Plaintiff a "Purchaser"?*

■ The Defendants seek Summary Judgment based on their contention that the Trustee has no standing to bring this action because he is not a "purchaser" under § 1707.43. The Defendants cite *Independent Investor League v. Saunders,* 64 F.R.D. 564 (E.D.Pa.1974) for the proposition that the rights granted to an initial purchaser of a security do not attach to the security and do not pass to subsequent purchasers or transferees of the security. Assuming Zula Wolfram was the owner of NEST, Inc., she was the initial purchaser of the stock, and subsequently assigned all her rights, title and interest in the stock to the Trustee. Under the Defendants' theory, the right to sue under the Ohio Security Act would not pass to the Trustee.

The Defendants argue that the *Saunders* case is analogous to the case at bar, irrespective of the fact that the action was

brought under federal securities law, rather than state "Blue Sky Law". In *Saunders,* the plaintiffs asserted that whatever cause of action accrued to a previous bondholder who owned the bonds at the time of the violation of the securities laws, those causes of action were automatically assigned to the current bondholder when the bonds were purchased. As the court noted, "According to the plaintiffs' theory, the simple act of buying a bond, without more, also purchases all rights of action that any prior holder might have had." *Saunders, supra,* at 572. The court rejected that argument as being totally without merit. However, the Opinion specifically noted, "It is not asserted that any plaintiff ever received an express assignment of choses in action possessed by their predecessors ...". *Id.* at 572 Thus, the court did not address the effectiveness of an actual assignment. It simply rejected the argument that causes of action attached to the security, and thereby pass automatically to subsequent purchasers. It should also be noted that there are numerous differences between federal and state security laws. *See, e.g.,* Buchanan, *Developments in Litigation and Enforcement Proceedings Under State Securities Laws,* 41 Bus.Law., 1525, 1528–1529 (1986).

The Plaintiff–Trustee cites *Indemnity Ins. Co. of North America v. Kircher,* 47 Ohio App. 140, 145, 191 N.E. 374, 376 (1934) in support of the argument that the term "purchaser" includes a person who acquires a security by assignment. While *Kircher* does state, in *dicta,* that the term "Sale", as used in the Ohio Securities Act of 1929 (repealed), included an "assignment", it appears that the court was referring to an assignment of stock by a dealer in securities as part of a public offering. The case does not address the question of the assignability of a cause of action for rescission which has been assigned along with the ownership of the underlying stock. It does not appear that any Ohio courts have ruled on the assignability issue presently before this Court. Accordingly, this Court must anticipate the rule that would be applied by the state courts if they were confronted with the same issue.

In most states, including Ohio, one general test of assignability is whether the right or claim would survive and pass to the executor or administrator of the owner in the event of the owners death. *Cincinnati v. Hafer,* 49 Ohio St. 60, 66, 30 N.E. 197, 20 (1892); 6 O.Jur.3d *Assignments* § 5; 1 O.Jur.3d *Actions* § 150. Consequently, the Court will examine not only state Blue Sky Law cases involving assignments but also cases and statutes which hold that a cause of action survives the death of the purchaser.

Courts which have previously considered cases involving the assignability of causes of action under state Blue Sky Laws have generally allowed assignment. *See generally,* 3 L.Loss, *Securities Regulation,* 1819–1819 (2d ed. 1961). Two Michigan cases have held causes of action under Michigan's Blue Sky Law to be assignable. In *Superior Piston Ring Co. v. Brown, Anthony & Co.,* 294 Mich. 358, 293 N.W. 679 (1940), the Michigan Supreme Court stated:

> Under the above facts it seems clear that the purchasers of the stock had a right of action under the provisions of the Blue Sky law, as hereinafter noted, in consequence of a clear breach of the broker's bond given in compliance with the provisions of that law. The rights of action of the respective purchasers were assigned to the plaintiff in this suit; and so plaintiff stands in the shoes of the purchasers so far as its legal rights are concerned.

*Id.* 294 Mich. at 364, 293 N.W. at 680. The court went on to hold, "under such a state of facts the surety on the bond should be held liable to indemnify plaintiff as the assignee of the stock purchasers for the amount of the loss ..." *Id.* 294 Mich. at 365, 293 N.W. at 681.

In a subsequent case before the United States District Court for the Eastern District of Michigan, the court cited *Superior Piston Ring, supra,* for the proposition: "Under Michigan law, as under federal, the fact that the person seeking to void the transaction is an assignee makes no difference. Rights under the Blue Sky Law are

assignable." *Kinsey v. Knapp*, 154 F.Supp. 263, 269 (E.D.Mich.1957), *rev'd on other grounds sub nom. Knapp v. Kinsey*, 249 F.2d 797 (6th Cir.1957), *cert. denied*, 356 U.S. 935, 78 S.Ct. 795, 2 L.Ed.2d 810 (1958).

In *Auslen v. Thompson*, 38 Cal.App.2d 204, 101 P.2d 136 (1940) the court held that causes of action under the California Blue Sky Law were assignable. The court held that because the remedy for violation of the California Corporate Securities Act was based on the actual loss, the remedy of rescission was not a penalty. The court also noted that the sale of stock without a permit was a tort which affected property and was not of a purely personal nature. Consequently, it was assignable. *Auslen v. Thompson, supra*, 101 P.2d at 141.

In an earlier case, the Supreme Court of Utah considered the assignability issue, discussing many common law decisions on assignability. *Mayer v. Rankin*, 91 Utah 193, 63 P.2d 611 (1936). The court noted: "The trend of judicial opinion has been to enlarge rather than to restrict the causes that may be assigned." *Id.* 63 P.2d at 616. For reasons very similar to those set forth in *Auslen v. Thompson, supra*, the court held that causes of action under Utah's Blue Sky Laws were assignable.

As noted previously, under Ohio law, and as a proposition of general common law, survivability and assignability are closely related concepts. Older decisions have held that causes of action under state securities law survive the death of the plaintiff. *See, Estate of Leedom*, 225 Wis. 148, 273 N.W. 471 (1937); *Caldwell v. Cole*, 326 Ill. 502, 158 N.E. 159 (1927).

Under the Uniform Securities Act, every cause of action survives the death of any person who might have been a plaintiff or defendant. *See*, IIC–Part 2 *Business Organizations* § 9.06 (1987). Currently, over thirty (30) states have adopted Blue Sky Law statutes based upon the Uniform Securities Act. The drafters of the Act specifically included the survival provision, giving rise to the inference of a corresponding intent to allow the assignment of causes of action for rescission. Ohio has a general survival statute, O.R.C. § 2305.21, which provides:

**2305.21 Survival of actions**

In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

After review of the relevant "Blue Sky Law" cases and the statutes, it appears that Ohio courts would uphold this assignment where both the right to the Liberty Airlines stock, and the cause of action before the Court, were assigned to the Trustee. Accordingly, the Trustee "stands in the shoes" of Mrs. Wolfram, and has standing to bring this action as a "purchaser" under O.R.C. 1707.43.

*Is Compliance with Rule 23.1 Fed.R. Civ.P. Required?*

This action is not a shareholders derivative action. Thus, Federal Rule of Civil Procedure 23.1 is inapplicable to this case.

*Is the "Tender" Requirement Excused?*

■ The shares which are the subject of this litigation were never issued by Liberty Airlines. Therefore, the Trustee is unable to tender the shares back to the corporation as is required by O.R.C. § 1707.43. The Defendants argue that this prevents the Trustee from prevailing in this action. The Trustee asserts that he is excused from tendering the shares. The Trustee's Memorandum indicates that the Trustee stands ready to tender the shares if Liberty Airlines ever issues them.

Initially, it should be noted that the fact that the Trustee has not tendered the shares is *not* grounds for granting Summary Judgment for the Defendants. Ohio courts have allowed the tender of shares to be made at trial. *See, Crane v. Courtright*, 2 Ohio App.2d 125, 206 N.E.2d 913 (1964); *1976 Worthington Investors Club v. Ranger Mining Associates*, Blue Sky Law Reporter (82–84 CCH Decisions ¶ 71,811) (Franklin Cty. Common Pleas 1982). Accordingly, Ohio law allowing

tender at Trial, the failure to tender the shares does not provide grounds for Summary Judgment for the Defendants prior to Trial. However, the Court will consider whether tender is excused in the present case thereby allowing Summary Judgment to be granted in favor of the Trustee, if otherwise proper.

In *Roger v. Lehman Bros. Kuhn Loeb, Inc.*, 621 F.Supp. 114 (S.D.Ohio 1985), the District Court examined the tender requirement under O.R.C. § 1707.43. The court concluded that the formal tender of stock was not always a prerequisite to rescission. In *Roger*, the plaintiff sought rescission of a sale of shares of "Cinola, Ltd.". After purchasing the shares, the plaintiff sold them back to the seller, Lehman Brothers Kuhn Loeb, Inc. Consequently, the Plaintiff was unable to comply with the formal requirements of tender. The Opinion examined the relevant Ohio case law, and the court determined that "the Ohio Supreme Court has consistently held in favor of the investor to promote the remedial intent behind Chapter 1707." *Roger, supra,* at 118. The court then looked to the purpose of the tender requirement, which is to put the parties back in the position they were in before the contract was entered into. Because that purpose could be accomplished by other means, the court allowed rescission without the plaintiff tendering the shares. *Id.,* at 119.

Other decisions have also recognized exceptions to the requirement that stock be tendered for rescission. State Supreme Courts have held tender to be unnecessary when the stock is valueless. *See, McAtee v. Garred,* 185 Okla. 314, 91 P.2d 1095 (1939); *Lesher v. Bonner,* 269 Mich. 124, 256 N.W. 827 (1934); *Moe v. Coe,* 124 Or. 436, 263 P. 925 (1928); *Vercellini v. U.S.I. Realty Co.,* 158 Minn. 72, 196 N.W. 672 (1924). Courts have also allowed rescission without tender when the securities were not in plaintiff's control. *McBreen v. Iceco,* 12 Ill.App.2d 372, 139 N.E.2d 845, 847 (1956) (plaintiff turned over stock in corporation to bankruptcy trustee); *Ek v. Nationwide Candy Division, Ltd.,* 403 So.2d 780, Blue Sky Law Reporter ('82–84 CCH Decisions, ¶ 71,771) (La.Ct.App.1981) (plain-

tiff only required to tender items under her control).

These cases appear to be in harmony with the maxim that equity will not require the doing of a vain or useless thing. No purpose would be served by forcing Liberty Airlines to issue valueless shares in order for them to be tendered to the Defendants in this case. Moreover, the policy of protecting purchasers would not be furthered by holding that the Ohio Securities Act does not extend its protection to cases where a corporation never issues the shares which were purchased. Therefore, based upon the analysis in *Roger v. Lehman Bros. Kuhn Loeb, Inc., supra,* tender is not a prerequisite for rescission in this case, where the corporation never issued the shares which were purchased.

*Defenses Based on "In Pari Delicto".*

■ The Defendants assert that the Trustee is subject to certain defenses which would be applicable against Bell & Beckwith. Arguably, as the underwriter of the Liberty Airlines stock offering, Bell & Beckwith would be a "seller" of the shares in question. The Defendants make two arguments based upon this set of facts. First, the Defendants contend that the Trustee is tainted with Bell & Beckwith's "unclean hands", through the brokerage's participation in the sale. The second argument is based upon case law which holds that Ohio's Blue Sky Law is not intended to protect defrauded sellers, only defrauded purchasers. *Nickels v. Koehler Management Corp.,* 541 F.2d 611 (6th Cir.1976). The Defendants maintain that, as a representative of Bell & Beckwith, the Trustee should not prevail because Bell & Beckwith was a "seller". To be precise, Defendants contend it and Edward P. Wolfram, Jr. were the *only* sellers.

The Trustee argues that he is an assignee of Zula Wolfram's stock, and her right of action for rescission under Ohio law. The right to rescission did not come to the Trustee through the provisions of 11 U.S.C. § 541 or the Security Investor Protection Act. Consequently, the Trustee is bringing this action based upon rights acquired

through the assignment, not simply as the Trustee of the estate of Bell & Beckwith. Accordingly, the Trustee asserts that he should be able to bring this suit on behalf of Bell & Beckwith's customers and creditors, not Bell & Beckwith itself.

The Trustee's position appears to be the correct one. As a result of the assignment, he "stands in the shoes" of Zula Wolfram. *Superior Piston Ring Co. v. Brown, Anthony & Co.*, 294 Mich. at 364, 293 N.W. at 680. Therefore, defenses which might be raised if the Trustee's rights were derived from the Debtor under § 541, are not effective. A review of the case law reflects that a trustee is not necessarily subject to all defenses which could be asserted if the Debtor itself brought an action on its own behalf. *See, In re Southern Indus. Banking Corp.*, 66 B.R. 349, 362 (Bankr.E.D. Tenn.1986) (trustee does not "stand in the shoes" of the debtor in an action to avoid a preference); *In re Davis*, 785 F.2d 926, 927 (11th Cir.1986), *Matter of Intern. Gold Bullion Exchange, Inc.*, 60 B.R. 261, 264 (Bankr.S.D.Fla.1986) (trustee's "strong arm" powers are not forfeited because of the debtor's fraud); *In re O.P.M. Leasing Services, Inc.*, 28 B.R. 740, 761 (Bankr.S.D. N.Y.1983) (trustee's right to recover payments made by the debtor not barred by the prepetition wrongful conduct of the debtor).

The fact that the Trustee's rights come from the blanket assignment also negates Defendants' defense based on "unclean hands" or *in pari delicto*. *In re Leasing Consultants Inc.*, 592 F.2d 103, 110 (2nd Cir.1979). Case law holds that for a defense base on *in pari delicto* to be allowed in securities cases, the fault of the parties must be "clearly mutual, simultaneous, and relatively equal". *Fogarty v. Security Trust Co.*, 532 F.2d 1029, 1033 (5th Cir. 1976). There has never been any assertion that Zula Wolfram was involved in any fraudulent activity at Bell & Beckwith, nor has there been any indication that she cooperated in any way with the Defendants, or the Debtor, in violating the Ohio Securities Act. *See, Lawler v. Gilliam*, 569 F.2d 1283, 1292–1294 (4th Cir.1978).

*The Effect of Liberty Airlines' Offer to Rescind.*

■ The Defendants argue that a written offer to rescind made by Liberty Airlines on or about January 29, 1983 should prevent the Plaintiff–Trustee from maintaining this action.

The Trustee contends that there was no valid offer to rescind under § 1707.43. The offer to rescind was made because of changes in the offer which were disclosed in a supplement to the November 12, 1983 Prospectus. Most importantly, the Trustee points to the fact that none of the investors were informed of the violations of the escrow provisions in the offer to rescind, and they had no other source of knowledge that a violation had occurred. Consequently, the offer to rescind was not made under § 1707.43, and was not sufficient to impede the Trustee's pursuit of this litigation.

The relevant portion of § 1707.43 states:

No purchaser is entitled to the benefit of this section who has failed to accept, within thirty days from the date of such offer, an offer in writing made after two weeks from the date of such sale or contract of sale, by the seller or by any person who has participated in or aided the seller in any way in making such sale or contract of sale, to take back the security in question and to refund the full amount paid by such purchaser.

A review of the offer to rescind reflects that it was not made under § 1707.43. An offer to rescind cannot be used to deny purchasers the benefit of § 1707.43 where investors have no knowledge of the violation which gave rise to the right to rescind under the Securities Act. For a rescission offer to be effective, the Blue Sky Law violation must be disclosed. *See generally,* Friedman, *Ohio Securities Law & Practice,* T 35.04(D), 310–311 (1987). In addition, the statute appears to contemplate an offer to rescind which remains open for thirty (30) days. Viewing the offer in the light most favorable to the Defendants, the offer made in Supplement No. 1 to the November 12, 1982 Prospectus, by its own terms, was only open for five (5) days.

*Would Violation of the Escrow Requirement Give Rise to a Right to Rescind Under § 1707.43?*

■ In order to make a public stock offering of Four Hundred Thousand (400,000) shares of its stock, Liberty Airlines sought registration by qualification under § 1707.09. An "Application for Registration" was filed with the Ohio Division of Securities, and the Division granted the Application with certain conditions precedent. Registration by qualification is defined in § 1707.01(Q)(2), which states:

> "Registration by qualification" means that the requirements of sections 1707.09 and 1707.11 of the Revised Code have been complied with.

The November 12, 1982 Prospectus apparently outlines the requirements which the Division of Securities imposed pursuant to the Order granting the Application for Registration. The Prospectus states:

> Under the terms of the Escrow Agreement, the Escrowing Sharholders are to deposit their certificates for escrowed shares with the Escrow Agent, which is to hold the certificates until the Division has given written approval to the release of the certificates.

The Prospectus also states:

> The following individuals (the "Escrowing Shareholders") were required by the Division to place their shares in escrow: Merle E. Pheasant, Jr., John R. Ayling, Thomas J. Wiles, and Robert F. Wigmore.

November 12, 1982 *Liberty Airlines Prospectus* at 19.

Pursuant to the Order granting the Application for Registration, Mr. Ayling deposited Three (3) certificates into escrow. The total number of shares shown on the escrowed certificates was Seventy-five Thousand (75,000) shares. However, these certificates are marked as cancelled on Liberty Airlines books. There was no cancellation stamp, or other notice, on the certificates to alert the escrow agent that the certificates were cancelled. Moreover, the books reflect that Mr. Ayling may have had Seventy-five Thousand (75,000) *other* shares outstanding, which he did not escrow pursuant to the Order by the Division of Securities.

Failure to comply with the escrow requirements of a Division of Securities Order would be a violation of the conditions of the Registration by Qualification under 1707.01(Q)(2) and 1707.09. Section 1707.43 states in pertinent part:

> **1707.43. Remedies of purchaser in unlawful sale**
>
> Every sale or contract for sale made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the purchaser ...

Accordingly, the violation of a condition placed upon Registration by Qualification by the Ohio Division of Securities does provide grounds for rescission under § 1707.43. A violation of a Division Order is a violation of Chapter 1707.

*Would the Failure to Escrow Valid Certificates be a Material Violation?*

The Defendants maintain that even if Mr. Ayling did not comply with the escrow requirements in the Ohio Division of Securities Order, it is not a "material violation" of the Ohio Securities Act. Under § 1707.43, violations of Chapter 1707 make sales voidable "unless the court determines that the violation did not materially affect the protection contemplated by the violated provision." Defendants argue that no shareholders were actually injured as a result of any failure to comply with the Division Order.

The Trustee does not assert that there was any actual injury to shareholders attributable to the violation. Nevertheless, the Trustee argues that the failure to comply with a condition precedent to effective registration is, in and of itself, a material violation. If a failure to comply with a Division Order requiring escrow is immaterial, it then follows that effective registration would also be immaterial. In other words, a violation of a specific condition in a Division Order renders the registration ineffective, and the failure to register is, as a matter of law, a material violation of the Blue Sky Laws.

In *Pencheff v. Adams*, 5 Ohio St.3d 153, 449 N.E.2d 1277 (1983) the Ohio Supreme Court addressed the "material violation" question. The court held, as a matter of law, that the failure to comply with O.R.C. § 1707.44(C)(1) materially affects the protection contemplated by that provision and entitles a purchaser of unregistered securities to the relief provided under O.R.C. § 1707.43. It should be noted that § 1707.44(C)(1) prohibits "knowingly and intentionally" offering and selling non-exempt, unregistered securities. *See*, Friedman, *Ohio Securities Law & Practice*, T 35.04 at 310 (1987). The Supreme Court also considered the "materiality" issue in *Bronaugh v. R. & E. Dredging, Co.*, 16 Ohio St.2d 35, 242 N.E.2d 572 (1968). The Court held in *Bronaugh* that the violation was not "of such a trivial nature so as to 'not materially affect the protection contemplated' by that provision." *Bronaugh*, *supra*, 16 Ohio St.2d at 41, 242 N.E.2d at 576. As the Court of Appeals stated in *Bell v. Le–Ge*, 20 Ohio App.3d 127, 131, 485 N.E.2d 282, 285 (1985): "The Buyer could obtain rescission even though the seller acted in good faith and the buyer failed to show any loss attributable to the lack of registration." The Court of Appeals also noted that the Supreme Court focused on the significance of the "protection contemplated" by the statutory requirement, rather than the actual effect of the violation on the rescinding buyer. *Id.* 20 Ohio App.3d at 131, 485 N.E.2d at 285.

Under Ohio case law, it does not appear that the lack of actual injury to shareholders should be a major factor in this Court's determination of whether or not a violation of the Order to escrow was material. On the other hand, it does not appear that any and all violations of conditions set forth in Orders from the Division of Securities are necessarily material. If the failure to comply consisted of Mr. Ayling's failure to escrow only a few shares, Ohio courts might find that failure to be of a trivial nature when viewed in the context of the protection contemplated, and the facts and circumstances of the sale.

Registration by Qualification requires a seller to comply with a number of disclosure provisions which provide purchasers with some measure of protection. The Court is reluctant to equate any and all violations of Division Orders with a seller's total disregard of the entire registration process. Instead, it appears that Ohio courts would adopt a facts and circumstances approach to determine whether the violation was material, or "of a trivial nature". This inquiry would focus on the protection which was contemplated by both the statute and the actual Division Order. In the present case, the Trustee's allegation that Mr. Ayling failed to properly escrow at least Seventy-five Thousand (75,000) shares would clearly be material violation under Ohio Law, if proved.

Mr. Ayling had purchased his shares at a price significantly lower than the public offering price of Five Dollars ($5.00) a share. The Division of Securities appears to have specifically required Mr. Ayling to escrow all his shares. If he failed to do so, instead escrowing Seventy-five Thousand (75,000) cancelled certificates, then the number of shares which Mr. Ayling retained were not trivial in relation to the size of the offering, or the price per share. His failure to comply with the Division of Securities Order and the violation of the provisions of Chapter 1707 would not be "of a trivial nature" under Ohio law. The escrowing of previously cancelled certificates, representing a larger number of shares, would impair the protection contemplated by the statute, and the Division Order, resulting in a "material violation".

*Who Could Be Liable?*

The scope of liability is set forth in 1707.43, which states in pertinent part:

Every sale or contract for sale made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser ...

The Defendants cite *Leeth v. Decorator's Manufacturing, Inc.*, 67 Ohio App.2d 29,

425 N.E.2d 920 (1979) and argue that "participation" means actively participating in the particular sale which is the subject of the action. The Defendants also assert that the statute refers only to persons actually inducing the plaintiff to purchase the security, or acting as an intermediary in the sale.

The Trustee contends that the scope of liability is much broader. He cites cases such as *Boddy v. Theiling*, 129 Ga.App. 273, 199 S.E.2d 379 (1973), and O.R.C. § 1701.59(B), which states in pertinent part:

> A director shall perform his duties as a director ... in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances.

The Trustee makes several related arguments. First, that participation in the sale refers to the entire offering, not just the particular sale made to NEST, Inc. Secondly, the Trustee maintains that Ohio law requires directors to essentially "oversee" stock offerings. Accordingly, pursuant to their oversight function, directors participate in the sale under § 1707.43. While the Trustee does not directly attack the decision in *Leeth*, the effective date of the amendment to § 1701.59, detailing director duties, was August 7, 1980. *See, Baldwin's Ohio Legislative Service 1980* at 5–222. The *Leeth* decision was prior to the enactment of this amendment, which was based upon § 35 of the Model Business Corporation Act, as revised in 1974. The third element which is implicit in the Trustee's argument comes from the observations made by the District Court in *Roger v. Lehman Brothers Kuhn Loeb*, 621 F.Supp. 114 (S.D.Ohio 1985). In *Roger* the District Court stated:

> ... [T]he Ohio Supreme Court has consistently held in favor of the investor to promote the remedial intent behind Chapter 1707. *See, e.g., Bronaugh v. R & E Dredging Co.*, [16 Ohio St.2d 35, 242 N.E.2d 572 (Ohio 1968)] 'Any contrary determination would undermine the most fundamental purpose of the statute—protection of the public from the sale of unregistered securities.' *Pencheff v. Adams, supra*, 5 Ohio St.3d at 154, 449 N.E.2d at 1278.
>
> The [Ohio] Securities Act is remedial in nature and should be interpreted to provide the protection it is intended to give. *Miller v. Griffith*, 196 N.E.2d 154, 156 (Colum.Cty.Common Pleas 1961) ...

*Roger, supra*, at 118.

The Trustee's position is that the violation of the Order of the Division of Securities, requiring Mr. Ayling to escrow his shares, was a wrong which Chapter 1707 was intended to remedy. Further, the statutory language, calling for liability for those who "participated in or aided the seller in any way in making such sale," is broad enough, and flexible enough, to accommodate such an interpretation.

Only a limited number of Ohio cases deal with the question of who may be held liable under 1707.43. *See generally*, Friedman, *Ohio Securities Law & Practice*, T 35.-04(A) 306–308 (1987). No Ohio Supreme Court decisions directly address this issue. The first published decision to interpret who is liable under § 1707.43 was *Miller v. Griffith*, 92 Ohio Law Abs. 488, 196 N.E.2d 154 (Colum.Cty.Common Pleas 1961).

In *Miller v. Griffith*, the court held the president of the issuer liable as a participant in a nonregistered sale because the president had signed the stock certificate which was sold to the plaintiff. After noting that the defendant did not participate directly in the sale of the shares to the plaintiff, the court stated that the signing of the certificate contributed to the transaction, and was participation in the sale's consummation. Consequently, the president was equally at fault, and jointly and severally liable with the secretary of the corporation, who had actually made the sale. This ruling is supported by other courts which have addressed the same question. *See*, Annotation, *What Amounts to Participation by Corporate Officer of Agent in Illegal Issuance of Security, In Order to Impose Liability Upon Him Un-*

*der State Securities Regulations*, 44 A.L. R.3d 588, § 11 at 605–607 (1972).

The Ohio Court of Appeals addressed the liability issue in *Crane v. Courtright*, 2 Ohio App.2d 125, 206 N.E.2d 913 (1964). In *Crane*, the Court of Appeals reversed the lower court's dismissal of plaintiff's petition after the defendant demurred. The petition alleged that the sale was made "with the active assistance" of the defendant and that the defendant "participated" in the sale, encouraging plaintiff to purchase the security, and also acting as an intermediary in the sale. The Court of Appeals held that the petition was *sufficient* to state a cause of action against the defendant as a "seller". While the Defendants argue that the *Crane* court implied that the facts alleged in the petition were *necessary* for liability, the opinion does not appear to support their assertion.

Two other cases address the liability issue, but from a somewhat different perspective. *Hild v. Woodcrest Ass'n*, 59 Ohio Misc. 13, 391 N.E.2d 1047 (Montgomery Cty. Common Pleas 1977) and *Leeth v. Decorator's Mfg.*, 67 Ohio App.2d 29, 425 N.E.2d 920 (1979) deal primarily with the liability of professionals acting within the scope of their normal duties. In *Hild*, an accounting firm was retained to develop financial and investment information, and to prepare a memorandum for the purpose of attracting potential investors. The accounting firm also contacted a number of its own clients about the investment. The court held that the firm was liable under § 1707.43. In the same opinion, the court held that an attorney who merely prepared and executed the legal documents involved in the sale was not a "participant". *Hild, supra*, 59 Ohio Misc. at 31, 391 N.E.2d at 1057–1058.

The *Leeth* appeal also concerned an attorney's involvement in a transaction. The case involved a "contractor agreement" for the manufacturing of wall plaques. In *Leeth*, the Court of Appeals stated:

Although there is authority to the contrary, we believe the better test is that an attorney who is an officer of a corporation and who performs the normal duties of an attorney for the corporation must participate in some other manner in the affairs of the corporation, such as the signing of the investment agreement, to be liable under R.C. 1707.43.

The Court found that there was enough evidence in the record to support the trial courts finding of insufficient participation by the attorney. It should be noted that the defendant-attorney was also a director and secretary of the corporation. However, the opinion reflects that the attorney had no day-to-day role in the corporation, and only served as a director for approximately six months.

The Ohio Legislature passed an amendment to the Ohio Securities Act which addressed the issues raised in *Hild* and *Leeth*. Section 1707.431(A) states that an attorney, accountant, or engineer, whose performance in a transaction is incidental to the practice of their profession, will not be deemed to have "participated" because of that activity. Although this amendment did not become effective until after the events which led to the filing of the case at bar, it appears that the amendment is simply a codification of the holding in *Leeth*. The amended provision does not specifically mention director or corporate officer liability.

█ After review of the above authorities, it appears that the participation of some of the Defendants was not sufficient for them to incur liability under Ohio law. Even if the Court were to accept the Trustee's argument, that Ohio law imputes knowledge to directors based on a "prudent person" standard, it does not follow that the facts in this case support liability. It is important to remember that the alleged violation was not readily discernable. Attached to the Escrow Agreement, the escrow agent's Acknowledgment states that the certificates were deposited. Further, an examination of Liberty Airline's stock records shows that a valid certificate for Seventy-five Thousand shares of Liberty Airline's stock was on the books in Mr. Ayling's name. That certificate was apparently not placed into escrow, but to ascertain that fact would require the comparison

of information from several different sources. The placing of such a burden on corporate directors is not supported by Ohio case law, or the majority of case law interpreting other state's Blue Sky Laws.

Section 1701.59(B) states in pertinent part:

> ... In performing his duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, that are prepared or presented by:
>
> (1) one or more directors, officers, or employees of the corporation whom the director reasonably believes are reliable and competent in the matters prepared or presented;

See, Baldwin's Ohio Legislative Service 1980 at 5-222.

Under the statute, it would appear that the directors were entitled to rely on the escrow agreement, and the Acknowledgment of the deposit of the certificates, particularly when those documents are viewed in conjunction with the opinion letter sent by Merle E. Pheasant, Jr. Even the case cited by the Trustee, in support of liability for "do-nothing directors", includes this exception:

> "It should be noted that our Georgia statute expressly relieves the innocent directors from any liability in that they 'may rely upon financial information of the corporation represented to them to be correct by the officer of the corporation having charge of its books of account ...'"

Boddy v. Theiling, supra, 199 S.E.2d at 382.

The Court is aware of cases which have held officers and directors liable for voting in favor of an unregistered sale, or approving the overall scheme underlying the sale. See generally, Annotation, 44 A.L.R.3d 588 (1972). However, this case involves a different type of violation. It is one thing for courts to require a director to investigate whether a corporation has ignored the state's entire registration process, it is something quite different to require a director to engage in detective work to insure that other directors have complied with all the conditions for Registration by Qualification. Moreover, Ohio law does not appear to impute such knowledge to directors. Cf., Eastman v. Benchmark Minerals, Inc., 34 Ohio App.3d 255, 518 N.E.2d 23 (1986).

Accordingly, based upon this Court's best judgment as to how Ohio's Supreme Court would hold if confronted with the facts in this case, it appears that Summary Judgment should be granted in favor of the following Defendants: Thomas J. Wiles, Michael D. Simmons, Michael W. Frahn, Albert C. Hazelwood, Robert W. Colgan, George E. Kuehnl, and Wayne Glore. The Trustee has not alleged that these Defendants did anything which would be considered "participation". Simply being a director, and not detecting the failure to comply with all the conditions for Registration by Qualification, does not give rise to liability under Ohio Law.

■ Defendant Merle E. Pheasant, Jr.'s position is different in several respects. Mr. Pheasant, an attorney, served as counsel, secretary, and transfer agent for Liberty Airlines. Mr. Pheasant also issued an opinion letter, which stated that based upon his examination of the records, all matters set forth in the registration statement and prospectus were true, except he expressed no opinion as to the financial statements. Among the items set forth in the registration statement and prospectus was the statement that Mr. Ayling's stock had been escrowed. It appears Mr. Pheasant was also responsible for the supervision of the lawful issuance of shares and maintenance of the stock records of Liberty Airlines. In addition, John Ayling's Deposition reflects that Mr. Pheasant may have written the prospectus. See, October 4, 1983 Deposition of John Ayling, at 71.

Defendant's argue that Mr. Pheasant's position was practically indistinguishable from that of the defendant-attorney in Leeth v. Decorator's Mfg., supra, and that Mr. Pheasant is, therefore, not liable. While the defendant in Leeth and Mr. Pheasant were both directors, secretaries, stockholders and corporate attorneys, the scope of their activities directly relating to

the offering were not identical. It appears that there are genuine issues of material fact which preclude Summary Judgment for either party. There are several areas in which material issues of fact must be resolved. First, further evidence is required as to Mr. Pheasant's activities on behalf of Liberty Airlines. The example cited in *Leeth* for participation is "the signing of the investment agreement". This would seem to indicate that even actions which are relatively minor in terms of the sale, may give rise to liability. The second area of concern to the Court involves the character of the actions taken by Mr. Pheasant. If Mr. Pheasant was simply performing the normal duties of an attorney for the corporation, then the *Leeth* and *Hild* holdings indicate that liability should not attach as a result of those activities. The difficulty lies in separating Mr. Pheasant's activities into those covered by the "normal duties" exception, and those which are outside of an attorney's normal duties. This difficult categorization issue also precludes Summary Judgment based on the record presently before the Court. The third factual issue is raised by the March, 1987 affidavits of Mr. Ayling and Mr. Pheasant. Mr. Pheasant avers that the shares of Liberty Airlines stock had not been cancelled as of the date they were received by Mid–American National Bank and Trust Company. Looking at the evidence in the light most favorable to the Defendants, the Trustee has not conclusively established that the shares were cancelled prior to the closing of the offer on February 1, 1983.

Mr. Ayling's actions were also different from the other directors of Liberty Airlines. The deposition of Mr. Ayling is in evidence before the Court. In that deposition, Mr. Ayling states that at the time of Bell & Beckwith's closing on February 4, 1983, he had Liberty Airlines stock in his safety deposit box, not in escrow. *See, October 4, 1983 Deposition of John Ayling,* pages 62–67. The Trustee maintains that it was this violation of the Division of Securities Order that changed the character of the offering, and caused the offering to be in violation of Ohio Securities Law.

As stated previously, the Trustee contends that there are two actions taken by Mr. Ayling which would allow the Court to order rescission under Ohio's Blue Sky Laws. The first basis for liability is the allegation that Mr. Ayling escrowed cancelled stock certificates in violation of the Division Order. The March, 1987 affidavits present the same issue of material facts discussed in denying Summary Judgment against Mr. Pheasant. Both Mr. Pheasant and Mr. Ayling aver that the stock certificates were not cancelled at the time they were given to the escrow agent. If the certificates were cancelled after the closing of the public stock offering, it appears there would be no violation of Chapter 1707. Thus, Summary Judgment cannot be granted based upon the Trustee's allegation that cancelled certificates were escrowed.

A second factor which weighs against the granting of Summary Judgment is the state of the record before the Court. The Trustee asserts that Mr. Ayling failed to comply with the Order issued by the Ohio Division of Securities, requiring escrow. The relevant part of the Order states:

> IT IS ORDERED FURTHER, that the securities herein qualified be sold in accordance with the terms and conditions more fully set forth in the application, exhibits, and other documentation filed herein.

There are secondary sources indicating that escrow was required by the Division of Securities. *See,* Escrow Agreement; Supplement No. 1 to November 12, 1982 Prospectus. However, the Trustee has not provided the Court with the "application, exhibits, and other documentation filed herein." Without the documentation which provides the foundation for the conditions imposed upon Liberty Airlines and its directors, it is impossible for the Court to determine the intention of the Division of Securities in issuing the Order.

The absence of documentation of the Division's Order leads to the difficulties presented in the Trustee's second theory of liability. Mr. Ayling's deposition reflects

that he knew he was in possession of Seventy-five Thousand (75,000) shares of Liberty Airlines stock. Mr. Ayling's March 5, 1987 affidavit states that the shares were those which he was required to redeem by the National Association of Security Dealers. The Trustee does not argue that a failure to comply with the requirements of the National Association of Security Dealers gives rise to liability under the Blue Sky Laws. Rather, the Trustee argues that the Division Order is based upon compliance with the Security Dealers requirements. Essentially, the Trustee argues that the Division of Securities intended to remove all the "cheap stock" purchased at a cost lower that the public offering price, from the hands of the officers and directors of Liberty Airlines. However, without the documents which are referred to in the Division Order, the Court cannot draw such an inference. The materials before the Court are not sufficient.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that Plaintiff's Motion for Summary Judgment be, and is hereby, Denied.

It is FURTHER ORDERED that Defendants' Motion for Summary Judgment be, and is hereby, Granted as to: Thomas J. Wiles, Michael D. Simmons, Michael W. Frahn, Albert C. Hazelwood, Robert W. Colgan, George E. Kuehnl, and Wayne Glore; and Denied as to: Merle E. Pheasant, John R. Ayling, and Liberty Airlines, Inc.

It is FURTHER ORDERED that Plaintiff's Complaint against Thomas J. Wiles, Michael D. Simmons, Michael W. Frahn, Albert C. Hazelwood, Robert W. Colgan, George E. Kuehnl, and Wayne Glore be, and is hereby, Dismissed.

It is FURTHER ORDERED that Defendants' Thomas J. Wiles, Michael D. Simmons, Michael W. Frahn, Albert C. Hazelwood, Robert W. Colgan, George E. Kuehnl, and Wayne Glore Counterclaims

for Contribution be, and are hereby, Denied as Moot.